Hugh MALONE, Commissioner; and State of Alaska, Department of Revenue, Appellants/Cross-appellees,

v.

ANCHORAGE AMATEUR RADIO CLUB, INC.; Amvets # 2; and Diamond Bingo and Buffet, Inc., Appellees/Cross-appellants.

Nos. S–2723, S–2740.

Supreme Court of Alaska.

Oct. 27, 1989.

Peter B. Froehlich, Asst. Atty. Gen., Douglas B. Baily, Atty. Gen., Juneau, for appellants/cross-appellees.

David Gorman and Russell A. Nogg, Law Offices of Russell A. Nogg, Anchorage, for appellees/cross-appellants.

Before MATTHEWS, C.J., and RABINOWITZ, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Chief Justice.

Although gambling is generally unlawful in Alaska, the Commissioner of Revenue may issue permits to municipalities and non-profit organizations to conduct certain games of chance, including bingo. AS 05.-15.100. The Commissioner is authorized to adopt regulations concerning "the method and manner of conducting authorized activities and awarding of prizes or awards, and the equipment that may be used" and "other matters the Commissioner considers necessary to carry out this chapter or protect the best interest of the public." AS 05.15.-060(7), (12).

Bingo is defined as

a game of chance of, and restricted to, the selling of rights to participate, and the awarding of prizes, in the specific kind of game of chance sometimes known as bingo or lotto, played with cards bearing numbers or other designations, five or more in one line, the holder covering numbers when objects similarly numbered are drawn from a receptacle, and the game being won by the person who first covers a previously designated arrangement of numbers on the card[.]

AS 05.15.210(3).

Under AS 05.15.180(a), coin-operated instruments are barred for gambling pur-

poses. Paragraph (b) of section 180 provides that "an activity may not be licensed under this chapter unless it existed in the state in substantially the same form and was conducted in substantially the same manner before January 1, 1959."

Appellees sought permission from the Commissioner to operate computerized bingo games. The Commissioner refused based on the statutes set forth above. Appellees sued for declaratory and injunctive relief. We set forth the facts as found by the superior court:

Plaintiff–Appellant Anchorage Amateur Radio Club, Inc. and AMVETS #2 are Alaskan non-profit corporations ("permittees"), holding gaming permits issued by Defendant–Appellee Department of Revenue ("Department"), pursuant to AS 05.15.100. The permits authorize them to, among other things, conduct the game of "bingo." Plaintiff–Appellant Diamond Bingo and Buffet, Inc. ("contractor") has contracted with permittees to operate bingo games on its premises in Anchorage.

A Canadian corporation, "Diamond Bingo," has leased various bingo equipment to contractor, and allows contractor to use its name, "Diamond Bingo," in operating the bingo games. No ownership or other interests exist between the two corporations.

In about 1984, according to testimony presented at the hearing herein, Canadian/Diamond Bingo developed and began marketing computerized bingo games. In 1987, Diamond Bingo developed and leased to Permittees and/or Contractor a more advanced computerized bingo game, which is the subject of the instant dispute.

The computerized bingo game is coin activated, in the sense that a player has to drop a coin-like "token" into a slot in the bank on which playing boards are located and before which the player sits. The token trips a microswitch, which, in turn, activates the playing boards situated on the bank before a player's seat. The playing boards are electronically linked to the operator's central station and computer terminal ... to allow the

operator to verify a player's claim to have "bingoed" the game.

Instead of selecting numbers from a "ball blower" machine, the game operator pushes a tab on his terminal, and the computerized numbers-generator randomly selects a number, which the operator announces to the players and which is simultaneously displayed on television monitors throughout the room. Significantly, the generation of the number to be called is performed by a microprocessor programmed to randomly generate certain numbers—i.e., by software and not through the operation of a coin passing through the internal workings of a gambling machine or device, as with a "slot machine." When a player claims to have won the bingo game, the operator calls the player's board up on his screen as well as the other television monitors, and verifies the claim.

Advantages of the computerized bingo game are said to be that it generates numbers in a more truly random fashion than is done by conventional "ball blowers" (i.e., some of the balls used may be cracked or unevenly weighed and thus may not randomly bounce around their container); the bingo games can be played more quickly and efficiently and thus can' generate more income to the sponsoring charitable institutions (and no doubt, also to the promoters or contractors operating the games); and the computer keeps a "hard copy" of the results of the games, income, prizes paid etc., making an accounting therefor easier and, perhaps, reducing the risk of theft or embezzlement of proceeds of the games.

The operator using the more conventional bingo game equipment, by contrast, would reach into a "ball blowing" machine—something akin to a "fishbowl" wherein ping pong balls with numbers on them are rattling around—select one such ball by hand, and orally announce the number to the players who would then manually cover or mark the corresponding number on the hard "cards" before them. When a player

claims to have won a game, an assistant would walk over to the player's station and confirm the claim. Playing fees would be manually collected from the players by the assistants.

The superior court granted the permittees' request for injunctive relief. The state has appealed.

The question as to what equipment may be used in bingo has been committed by statute to the discretion of the Commissioner. AS 05.15.060(7). In reviewing a decision on a matter committed to the agency's discretion, we will reverse only if the decision was arbitrary, unreasonable, or an abuse of discretion. *North Slope Borough v. LeResche*, 581 P.2d 1112, 1115 (Alaska 1978).

In our view the superior court erred in granting injunctive relief. The Commissioner reasonably read the statutes to authorize a game played with mechanical rather than electronic devices. The computerized number generator used in the appellees' games does not comport with the requirement in AS 05.15.210(3) that numbered objects be "drawn from a receptacle." Moreover, AS 05.15.180(b) requires that bingo be conducted substantially as it was conducted before January 1, 1959. Computerized bingo games were not played in Alaska before that date.[1]

REVERSED.

Kevin McCoy, Asst. Public Defender, Kenai and John B. Salemi, Public Defender, Anchorage, for appellant.

W.H. Hawley, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

---

1. The permittees cross-appealed on procedural grounds seeking relief only if this case were remanded. Since no remand is required, the cross-appeal is moot.