Jennifer ABBOTT, John Shank, and Virginia Shank, Appellants,

v.

KODIAK ISLAND BOROUGH ASSEM-BLY AS THE ASSEMBLY and in its capacity as a Board of Adjustment on Appeal from the Kodiak Island Borough Planning Commission, Appellees.

No. S–6073.

Supreme Court of Alaska.

July 28, 1995.

John W. Abbott, Anchorage, for appellants.

Joel H. Bolger, Karen E. Bendler, Jamin, Ebell, Bolger & Gentry, Kodiak, for appellees.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

MATTHEWS, Justice.

Jennifer Abbott, John Shank, and Virginia Shank ("Owners") appeal a superior court award of attorney's fees to the Kodiak Island Borough Assembly ("Assembly") arising out of a zoning controversy. Owners argue that the superior court erroneously decided that they are not public interest litigants. Owners also argue that the attorney's fees were excessive, unnecessary, and based on duplicated services.

## I. FACTS AND PROCEEDINGS

In 1991, intending to build a housing development, the Natives of Kodiak applied for the rezoning of a piece of property and for preliminary approval of the property's subdivision plat. The rezoning was opposed by many local residents who own property in the vicinity of the planned development. The residents argued that the rezoning would harm the environment, damage the general character of their neighborhood, create drainage problems, decrease property values, and cause them to pay for road improvements. The dominant concern of the residents appeared to be that the proposed development would result in greatly increased traffic on Woodland Drive, a street on which many of the complainants lived leading to the proposed development.

The rezoning and subdivision plat were approved by the Kodiak Island Borough Planning and Zoning Commission and the Kodiak Assembly. Owners, who own property located on Woodland Drive, appealed the Assembly's decision to the superior court. On appeal, among other claims, Owners argued that the rezoning amounted to an unconstitutional taking of property without just compensation. The superior court affirmed the Assembly's decision. The superior court awarded $5,580 in attorney's fees to the Assembly. Owners appeal only the award of attorney's fees.

## II. DISCUSSION

### A. Are Owners Public Interest Litigants?

Owners argue that the superior court erred by denying them public interest litigant status. "A trial court's determination of whether a party is a public interest litigant is reviewed for an abuse of discretion." *Municipality of Anchorage v. Citizens for Representative Governance*, 880 P.2d 1058, 1061 (Alaska 1994). To qualify as a public interest litigant, a party must meet a four-part test:

(1) Is the case designed to effectuate strong public policies?

(2) If the plaintiff succeeds will numerous people receive benefits from the lawsuit?

(3) Can only a private party have been expected to bring the suit?

(4) Would the purported public interest litigant have [lacked] sufficient economic incentive to file suit ... if the action involved only narrow issues [without] general importance?

*Id.* at 1061–62.

The superior court denied Owners public interest litigant status because "[t]he bases for several of their issues on appeal show that they had sufficient economic incentives to proceed with the litigation without the issues that were also shared by others." The superior court was also uncertain as to whether numerous people would receive benefits from the lawsuit.

In two previous decisions, *Oceanview Homeowners Ass'n, Inc. v. Quadrant Construction & Engineering*, 680 P.2d 793, 799 (Alaska 1984), and *Brookwood Area Homeowners Ass'n, Inc. v. Municipality of Anchorage*, 702 P.2d 1317, 1326–27 (Alaska 1985), we granted public interest litigant status to homeowners associations which had challenged zoning decisions.[1] In *Oceanview*,

---

1. In another case, *Anchorage v. McCabe*, 568 P.2d 986 (Alaska 1977), a group of homeowners

a zoning board revoked zoning orders which restricted improvements to and the use of a private airstrip located near dwellings of members of a homeowners association. 680 P.2d at 795. The homeowners association appealed the zoning board's action to the superior court. *Id.* at 797. We decided that the superior court erred by denying the homeowners association public interest litigant status. *Id.* at 799.

We ruled that the first three requirements of the public interest litigant status test had been met because the homeowners' "appeal was designed to vindicate a strong public policy in effectuating zoning ordinances, [because] numerous people in the area would have benefitted had it succeeded, and [because] only a private party could have been expected to bring the appeal." *Id.* at 799. With regard to the fourth requirement, we stated, "*Oceanview's [the homeowners'] consistent emphasis on health and safety to the virtual exclusion of economic concerns* indicates that it would not have had 'sufficient economic incentive to bring the lawsuit even if it involved only narrow issues lacking general importance.'" *Id.* (emphasis added).[2]

We followed *Oceanview* in *Brookwood,* where a homeowners association appealed a zoning decision which had allowed a development to go forward. 702 P.2d at 1320. The basis for the appeal was an alleged violation of the Open Meetings Act. *Id.* We affirmed the superior court's decision that the homeowners association was a public interest litigant. *Id.* at 1326–27. Accepting a statement by the homeowners association that the proposed development would not result in economic injury to its members, we ruled that the homeowners would have lacked sufficient economic incentive to bring suit if the action

had not involved issues of general importance. *Id.* at 1327.

█ Under our decisions in *Oceanview* and *Brookwood,* Owners satisfy the first three requirements for public interest litigants. Owners' litigation was partially designed to effectuate strong public policies concerning protection of the environment and ensuring that procedural standards for zoning decisions are properly followed. Numerous property owners in the vicinity of the proposed development would have benefitted from success in the lawsuit. Only a private party could have been expected to bring the suit.

█ The determinative factor is whether Owners would have lacked sufficient economic incentive to file suit if the action involved only narrow issues without general importance. Throughout the administrative and judicial process, Owners argued that the rezoning would amount to a taking without just compensation, would significantly reduce the value of their land, and would require them to pay for improvements to Woodland Drive. For instance, in their statement of points on appeal to the superior court, Owners claimed that the Kodiak Zoning Commission erred "[i]n granting conditional plan approval for a plat that will result in the lowering of adjacent land value without providing for compensation to those adjacent land owners, in contravention of both the State and U.S. Constitutions." Earlier, in a letter to the Assembly sent during the administrative process, Owners' attorney stated that the rezoning "will substantially reduce the market fair value of [Jennifer Abbott's] property" and threatened to file a taking without just compensation lawsuit against Kodiak Island Borough.

appealed a zoning decision which permitted the construction of two eleven-story buildings in their neighborhood. The superior court, the City of Anchorage, and the homeowners all agreed that the homeowners were public interest litigants. *Id.* at 989. We thus did not have occasion to discuss whether it was proper to treat the homeowners as public interest litigants.

**2.** We rejected an argument that the homeowners did not deserve public interest litigant status because they had claimed for purposes of gaining

standing that "the immediate effect of the [zoning] decision is to deny or diminish the value of real property owned or leased by" them. *Id.* at 799 n. 3. We stated, "This is the only reference to economic concerns to be found in the record." *Id.* This reference to possible economic losses did not demonstrate that the homeowners would have had sufficient economic incentive to bring suit if the action had not involved issues of general importance, as it was an isolated statement made only for standing purposes. *See id.*

Thus, this case is distinguishable from *Oceanview,* where the landowners emphasized health and safety issues "to the virtual exclusion of economic concerns." *See* 680 P.2d at 799. The homeowners in *Oceanview* probably did suffer some economic injury as a result of the zoning action they challenged. *See supra* note 2. However, in this case, Owners believed the economic harm facing them was so substantial that they felt they had a viable taking without just compensation claim. As a result, this case is unlike *Oceanview* and *Brookwood* and is more analogous to *Stein v. Kelso,* 846 P.2d 123 (Alaska 1993).

In *Stein,* a group of miners contested the Department of Environmental Conservation's (DEC) certification of two pollution discharge permits. *Id.* at 124. The permits lowered the pollutant amounts permitted in wastewater emitted by the miners' mining operations. *Id.* at 125. The miners appealed the certification to the superior court, arguing that they were deprived of a property interest without just compensation or due process of law, and the superior court affirmed. *Id.* at 124. We upheld the superior court's determination that the miners were not public interest litigants. *Id.* at 127. We stated:

> The miners' own pleadings show that they sought a ruling that they had "lost their property rights and must be justly compensated." Although the miners now maintain that they would not receive any direct economic benefit from a favorable decision concerning DEC certification procedures, this assertion is in direct contradiction to their requested relief.

*Id.*

Likewise, in this case, Owners first made a taking without just compensation claim and now "maintain that they would not receive any direct economic benefit from a favorable decision ... in direct contradiction to their

requested relief." *See id.* Therefore, the superior court's finding that Owners "had sufficient economic incentives to proceed with the litigation without the issues that were also shared by others" is not clearly erroneous. We affirm the superior court's decision that Owners were not public interest litigants.

**B.** *Was the Attorney's Fees Award Improper Because of Duplicated, Unnecessary, or Excessive Services?*

"Where a trial court sits as an intermediate appellate tribunal, it has broad discretion to award a party reasonable attorney's fees." *Cook Inlet Pipe Line Co. v. Alaska Pub. Util. Comm'n,* 836 P.2d 343, 354 (Alaska 1992). "A trial court's award will be affirmed unless there has been a clear abuse of discretion." *Lyman v. State,* 824 P.2d 703, 706 (Alaska 1992). "We will overturn an award of attorney's fees and costs only if such an award was 'manifestly unreasonable.'" *Id.* (citing *Blackford v. Taggart,* 672 P.2d 888, 891 (Alaska 1983)).

Owners argue that the trial court abused its discretion in basing its award of attorney's fees on duplicated attorney services, pointing out that the Assembly's attorneys worked on the case in two different offices. However, Owners fail to "give any examples of duplicative and unnecessary services, by record citation or otherwise," and have consequently "failed to meet [their] burden of showing a clear abuse of discretion by the superior court." *See State v. Fairbanks N. Star Borough Sch. Dist.,* 621 P.2d 1329, 1335 (Alaska 1981).

Owners also argue that the superior court abused its discretion by basing its award on actual attorney's fees which were unnecessary and excessive. Owners have not demonstrated that the fees were unnecessary or excessive.[3] The Assembly submitted a de-

---

3. The only specific time expenditures of the Assembly's attorneys which Owners point to as unnecessary or excessive are the following:

[O]n 06/03/92 JHB spent 12 minutes reviewing a motion for extension of time; on 06/05/92 WWM spent 12 minutes reviewing extension documents; numerous entries for review of what are apparently one-page written matters each taking 6 minutes; on 09/01/92 18 minutes

was required to prepare a form request for oral argument; on 09.10.92 18 minutes was consumed in reviewing a motion for extension of time and preparing a non-opposition; a total of 7.6 hours was spent in "file review" while a total of 74.6 hours was expended in "research and writing" of the briefs.

tailed itemization of attorney services, and the superior court found that the fees "were necessarily incurred, and the hourly rates and the hours spent were reasonable." The superior court did not abuse its discretion.

## III. *CONCLUSION*

The superior court did not err in concluding that Owners were not public interest litigants. Their taking without just compensation claim and other repeated assertions that they would suffer a significant economic detriment from the proposed rezoning could reasonably be regarded as evidencing sufficient economic incentive to file suit. Owners did not demonstrate that the attorney's fees were unnecessary, excessive, or based on duplicated services. The attorney's fees award is AFFIRMED.

Owners did not give reasons as to why these time entries represented an unreasonable expenditure of time.