Peter ROBERTS, Appellant,

v.

STATE of Alaska, DEPARTMENT OF REVENUE, Wilson L. Condon, Commissioner, and Larry Meyers, Deputy Director, and State Of Alaska, Department of Law, Bruce M. Botelho, Attorney General, Appellees.

No. S–12180.

Supreme Court of Alaska.

June 22, 2007.

Rehearing Denied Aug. 14, 2007.

Peter Roberts, pro se, Anchorage, Appellant.

Dan N. Branch, Assistant Attorney General, and David W. Márquez, Attorney General, Juneau, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

Peter Roberts, owner of Downtown Bicycle Rental, Inc., filed a complaint objecting to the Alaska Department of Revenue's issuance of a gaming permit to Earth, a nonprofit organization. The superior court dismissed several counts of the complaint as an invalid assignment of claims from Downtown Bicycle Rental, which had no attorney, to Roberts. The court granted summary judgment for the State on all remaining counts,

declared that Roberts was not a public interest litigant, and ordered him to pay attorney's fees. Roberts appeals. Because the assignment of claims was an invalid attempt to circumvent statutory requirements, and because the Department of Revenue did not abuse its discretion or violate public policy or Roberts's constitutional rights when it approved Earth's permit application, we affirm the superior court's ruling. Because Roberts had economic incentive to sue, we also affirm the superior court's determination that he was not a public interest litigant.

## II. FACTS AND PROCEEDINGS

### A. Facts

Peter Roberts owns Downtown Bicycle Rental, a bicycle rental business located in downtown Anchorage. Roberts objected to a free bicycle loan program that Earth funded with proceeds of a state gaming permit.

Earth applied for and was granted a charitable gaming permit from the Alaska Department of Revenue. Earth conducted gaming activities under the permit, received over $39,000 in gaming proceeds, and spent approximately $7,000 on its Earth Cycle Program.

In June 2000 Earth operated the Earth Cycle Program, offering bicycles to the public for use free of charge from a location in front of the Old Federal Building in Anchorage. Peter Roberts and other bicycle rental business owners sent a letter to the federal General Services Administration, asking that Earth's permit to operate on federal property be revoked. The General Services Administration revoked the permit. Earth then moved its program to another downtown location. In response, Roberts complained to the owner of the land, and Earth moved again. In July 2000 Earth relocated to the grounds of the Anchorage International Youth Hostel. Roberts then asked the hostel to discontinue allowing Earth to operate the program from its property. The hostel refused to revoke its permission.

In the summer of 2000 Roberts complained to the Department of Revenue about Earth's use of gaming funds to operate the Earth Cycle Program. Dissatisfied with the De-

partment's response, Roberts wrote to Attorney General Bruce Botelho and Commissioner of Revenue Wilson Condon, demanding a halt to the program and claiming that the program was not educational and not charitable because it did not "lessen neighborhood tensions." Commissioner Condon issued a written response, indicating that the Department would not take the action Roberts requested.

In September 2001 Roberts filed a complaint with the Alaska Ombudsman, asking the Ombudsman to investigate the Department of Revenue's handling of his complaint. Several months later Roberts filed another complaint with the Ombudsman, expressing concerns about the Department of Law's handling of the issue. In March 2002 Assistant Ombudsman Linda Lord–Jenkins wrote to Roberts, explaining that she was closing the complaints because she found no "evidence of impropriety, serious flaws in the decision-making process or evidence that the decision [was] completely insupportable." She also informed Roberts that Earth had surrendered its gaming permit in September 2000 and had given the twenty-five bicycles to the hostel to distribute.[1] In May 2002 Acting Ombudsman Maria Moya wrote to Roberts, sustaining closure of the complaint.

### B. Proceedings

Appearing pro se, Roberts filed a complaint in October 2002 in Anchorage Superior Court on behalf of himself and Downtown Bicycle Rental. The complaint named the State of Alaska, Revenue Commissioner Condon, Attorney General Botelho, and Deputy Director Larry Meyers of the Department of Revenue as defendants. On December 2, 2002, Judge Peter A. Michalski dismissed the case without prejudice pursuant to AS 22.20.040(a)(2) because Downtown Bicycle Rental was not represented by an attorney, as Alaska law requires of corporations.[2] Roberts did not appeal Judge Michalski's order.

In December 2002 Downtown Bicycle Rental assigned its claims to Roberts. In March 2003 Roberts appeared pro se and filed a new complaint in Anchorage Superior Court, naming the same defendants as the first suit.[3] The complaint contained fourteen claims: (1) negligence; (2) violation of AS 05.15.150(a); (3) violation of AS 05.15.140(a); (4) violation of public policy; (5) bad faith/abuse of discretion; (6) breach of fiduciary and statutory duties; (7) violation of the public purpose clause of the Alaska Constitution; (8) a taking of property without just compensation; (9) violation of procedural due process; (10) impairment of freedom to contract; (11) violation of substantive due process; (12) violation of inherent rights/privileges and immunities; (13) tortious interference; and (14) violation of 42 U.S.C. § 1983.

In July 2003 Judge Tan declared Downtown Bicycle Rental's assignment of claims to Roberts invalid as an attempt to circumvent the requirement that corporations be represented by counsel and dismissed all claims arising under the assignment. In March 2004 Roberts filed an amended complaint, adding claims of violation of state antitrust statutes and equal protection. In August 2004 the superior court issued an order dismissing all claims for compensatory and punitive damages arising from the assignment; the claims for declaratory relief remained. The order noted Roberts's voluntary dismiss-

---

**1.** According to an affidavit submitted by an employee of the hostel, Earth donated the bicycles to the hostel in 2001. The hostel offered the bicycles to the public for a brief period in 2001, until "a group of bicycle rental businesses . . . complained and threatened the hostel with a lawsuit." The hostel discontinued offering the bicycles to the public and began restricting their use to hostel guests by the end of the 2001 summer.

**2.** AS 22.20.040 provides in relevant part:

(a) An action or proceeding may be prosecuted or defended by a party in person or by attorney. However,

. . . .

(2) a corporation, either public or private, shall appear by an attorney in all cases unless an exception to the corporation's appearance by an attorney has been explicitly made by law.

**3.** Roberts did not appeal Judge Michalski's order, instead filing a new case, which was assigned to Superior Court Judge Sen K. Tan. It is Judge Tan's decision that Roberts appeals in the instant case.

al of four of his claims.[4] The judge dismissed Roberts's negligence claim because the complaint did not allege harm to Roberts individually and dismissed Roberts's 42 U.S.C. § 1983 claim because such claims cannot be brought against state officials acting in their official capacity. The court also dismissed Roberts's claim of an antitrust violation because the alleged injury was "not the type of injury the state antitrust statute intended to protect," the claimed loss was not incurred by Roberts individually, and the statute was "not intended to prevent the State from operating the charitable gaming program."

Nine claims for declaratory relief remained after the superior court's August 2004 ruling. After cross-motions for summary judgment, the superior court granted summary judgment for the State on all remaining counts. The State moved for a Civil Rule 82 award of attorney's fees. The court found that Roberts was not a public interest litigant and ordered him to pay attorney's fees of $5,226. Roberts appeals the superior court's ruling as to the alleged violation of gaming statutes and public policy, bad faith and breach of fiduciary and statutory duty, and violations of substantive due process and privileges and immunities. He also argues the superior court erred in declaring the assignment invalid and contends that the court abused its discretion in determining that he is not a public interest litigant.[5]

## III. DISCUSSION

### A. Standard of Review

■ We affirm a grant of summary judgment if "there are no genuine issues of material fact and if the movant is entitled to judgment as a matter of law. When making this determination, we draw all reasonable inferences in favor of the non-movant."[6] For questions of law, we adopt "the rule of law that is most persuasive in light of precedent, reason, and policy."[7] We review a superior court's determination of a party's public interest litigant status for an abuse of discretion.[8]

■ When the superior court acts as an intermediate court of appeal, we independently review the merits of the administrative decision.[9] We review discretionary actions that do not require formal procedures for an abuse of discretion.[10] This is the standard we applied in another challenge to the administration of gaming statutes, *Malone v. Anchorage Amateur Radio Club, Inc.*[11] In *Malone*, we reviewed the Revenue Commissioner's denial of a request to operate computerized bingo games and applied the "arbitrary, unreasonable or an abuse of discretion" standard of review after concluding that the statute committed the question of equipment to the Department's discretion.[12]

■ Here, the statutory provisions at issue also grant considerable discretion to the Department. Alaska Statute 05.15.100(a) provides that "[t]he department may issue a permit to a municipality or qualified organization." Alaska Statute 05.15.130 provides that "[t]he department may supplement the definitions of qualified organizations and activities by ... adding ... additional requirements that the department considers neces-

---

4. Roberts voluntarily dismissed his claims alleging a taking of property without just compensation, impairment of freedom to contract, tortious interference, and violation of equal protection.

5. Although the State has not argued before us that this case is moot, we note that even if the case were moot, we would hear it to determine the prevailing party for attorney's fees purposes. *See, e.g., LaMoureaux v. Totem Ocean Trailer Express, Inc.*, 651 P.2d 839, 840 n. 1 (Alaska 1982).

6. *Alakayak v. British Columbia Packers, Ltd.*, 48 P.3d 432, 447 (Alaska 2002) (internal citations omitted).

7. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

8. *Abbott v. Kodiak Island Borough Assembly*, 899 P.2d 922, 923 (Alaska 1995).

9. *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992).

10. *Olson v. State, Dep't of Natural Res.*, 799 P.2d 289, 292–93 (Alaska 1990) (noting the standard appropriate for quasi-executive determinations).

11. 781 P.2d 576 (Alaska 1989).

12. *Id.* at 578.

sary for the best interests of the public." Although the Department has not supplemented those definitions, this provision suggests that the legislature intended to grant the Department considerable discretion in administering the statutes. Alaska Statute 05.15.140(a) allows the Department to make a determination whether issuance of a permit is "in the best interests of the public." [13] This discretion, coupled with the lack of formal procedures,[14] make the abuse of discretion standard appropriate.

### B. The Superior Court Properly Declared the Assignment Invalid and Dismissed Claims Arising out of the Assignment.

■ Judge Michalski dismissed the first case because Downtown Bicycle Rental was not represented by an attorney as required by AS 22.20.040(a)(2).[15] Roberts did not appeal this decision. After the dismissal Downtown Bicycle Rental assigned its claims to Roberts, who filed a new complaint before Judge Tan. Judge Tan declared the assignment invalid as an attempt to circumvent the statute and dismissed all claims arising out of the assignment. The court noted the lack of an applicable statutory exception and ruled that the assignment was invalid because "it would circumvent the requirement ... that corporations be represented by counsel."

Roberts appeals, claiming the assignment was valid.

Roberts asks us to make a common law exception to the statute and allow the assignment, given that he is the alter ego of Downtown Bicycle Rental. He also urges us to "lift[ ] the corporate veil" to prevent an injustice, contending that "a device designed to protect investors has been hijacked by government officials."

■ We conclude that the superior court correctly declared the assignment invalid and refused to recognize an exception to AS 22.20.040(a)(2).[16] Roberts does not argue to this court that the assignment changes the applicability of AS 22.20.040(a)(2). As the State noted in its motion before the superior court, most courts have rejected such assignments as invalid attempts to circumvent the rule that corporations be represented by counsel.[17] As explained by the Second Circuit in *Jones v. Niagara Frontier Transportation Authority*, "[i]n light of the[ ] policy reasons for preventing a lay person from representing a corporation in litigation, the federal courts have ... disapproved any circumvention of the rule by the procedural device of an assignment of the corporation's claims to the lay individual." [18]

Although some states have made an exception where a closely held corporation is the litigant's "alter ego," [19] such cases are inap-

---

**13.** AS 05.15.140(a) provides:
> The department may not issue or renew a permit except upon satisfactory proof that the applicant is a municipality or qualified organization, the activity may be permitted under this chapter, and the issuance of the permit is not detrimental to the best interests of the public. Upon request of the department, the applicant shall prove conclusively each of these requirements before a permit may be issued or renewed.

**14.** The State Administrative Procedure Act does not require formal procedures for the issuance of gaming permits. AS 44.62.330. Though the gaming statutes provide for basic requirements, such as the satisfactory proof requirement in subsection AS 05.15.140, these requirements are minimal. Moreover, the statutes grant the department discretion to determine whether to impose any additional requirements. AS 05.15.130.

**15.** AS 22.20.040(a)(2) provides that a corporation "shall appear by an attorney in all cases

unless an exception to the corporation's appearance by an attorney has been explicitly made by law."

**16.** The State argues that Roberts's arguments are precluded by his failure to appeal Judge Michalski's order in the first case. But because no assignment had occurred at that time, the order did not address the question of assignment and issue preclusion does not apply. *See McElroy v. Kennedy*, 74 P.3d 903, 907 (Alaska 2003) (noting that issue preclusion requires that the issue be identical to the issue decided in the first action).

**17.** *See* Jay M. Zitter, *Annotation, Propriety and Effect of Corporation's Appearance Pro Se Through Agent Who Is Not Attorney*, 8 A.L.R. 5th 653 § 12b (1992).

**18.** 722 F.2d 20, 23 (2d Cir.1983).

**19.** *See* Zitter, *supra* note 17 § 14a–14b.

posite in Alaska given the statute's clear command that any exception be "explicitly made by law."[20] This language suggests that the legislature intended to restrict any exceptions to those specifically set out in statute, precluding the development of common law exceptions. Because the statutory scheme unequivocally requires representation by counsel, the superior court was correct to reject assignment as a procedural device to circumvent the requirement. Piercing the corporate veil in this case, as Roberts advocates, would effectively recognize a common law exception to the statute, which is inappropriate given the statute's clear requirement that any exceptions be explicitly made.

Moreover, unlike traditional veil piercing, where the court pierces the veil to recognize that the corporation is an alter ego, Roberts essentially argues that he should be allowed to pierce the veil to serve his own interests. To allow an individual the protections of the corporate form, as well as the option to shed the corporate form when it serves his or her interest, undermines the purposes of corporate law. We affirm Judge Tan's ruling that the assignment was an invalid attempt to circumvent AS 22.20.040(a)(2) and affirm his dismissal of all counts arising out of the assignment.

## C. The Superior Court Properly Granted Summary Judgment to the State on Roberts's Statutory Claims.

### 1. Issuance of the permit did not violate the statute's limitation on the use of proceeds provision.

■ Roberts appeals the superior court's ruling that the gaming permit did not violate state gaming laws. He first appeals Judge Tan's grant of summary judgment to the State on his claim that issuance of the permit violated the "limitation on use of proceeds" provision of the Alaska gaming laws. This limitation, found in AS 05.15.150(a), provides that authority to conduct gaming activity is contingent upon dedication of the net proceeds "to the awarding of prizes to contestants or participants and to political, educational, civic, public, charitable, patriotic, or religious uses in the state."[21]

The superior court found that the Department acted reasonably when it determined that the program was charitable and consistent with the limitation on use of proceeds provision. The court noted the definition of charitable organization in the statute[22] and the broad construction of "charity" we applied in *Fairbanks North Star Borough v. Dena'Nena' Henash.*[23] The superior court reasoned that

> Earth's articles of incorporation state that its purpose was to "teach and practice individual lifestyles which enhance clean earth, air and water." Earth's stated purpose fits within the statutory definition of a charitable organization. Traffic in any urban area is a "public concern" and the Department reasonably could have determined that a free bicycle program would help to alleviate the concern. In addition, riding a bicycle is a healthy activity, and promotes good health among its citizens. The Department made a reasonable determination that Earth and its bicycle program fit within the statutorily defined restrictions for charitable purposes.

The superior court further noted that "[t]he statutory language is very broad, and the

---

**20.** AS 22.20.040(a)(2).

**21.** AS 05.15.150(a) further provides that "[p]olitical, educational, civic, public, charitable, patriotic, or religious uses" means uses benefiting persons either by bringing them under the influence of education or religion or relieving them from disease, suffering or constraint, or by assisting them in establishing themselves in life, or by providing for the promotion of the welfare and well-being of the membership of the organization within their own community. . . .

**22.** AS 05.15.690(7) defines "charitable organization" as "an organization, not for pecuniary profit, that is operated for the relief of poverty, distress, or other condition of public concern in the state."

**23.** 88 P.3d 124, 132 (Alaska 2004) (applying the "broad common law definition of 'charity' " in determining whether Native nonprofit corporation qualified for charitable purposes tax exemption).

literal language of the statute covers matters of public welfare."

Roberts contends that the superior court erred because Earth's use of proceeds for its free bicycle program does not fall within the statutory limitations. He also maintains that the court relied on a theory that the State did not argue and that was not supported by sufficient facts. Roberts also challenges the superior court's interpretation of the statute, arguing that the court gave the term "public concern" greater importance than other terms of the statute.

We conclude that the superior court properly granted summary judgment to the State. The statutory language encompasses a vast array of possible programs and allows proceeds to be used for a broad range of uses, including "political, educational, civic, public, charitable, patriotic, or religious uses." [24]

This broad reading of the statutory language is supported by our decision in *Botelho v. Griffin*, where we held that "[b]y requiring a portion of the money spent on charitable gaming to benefit the public generally, Alaska's gaming laws create the effective equivalent of a charitable trust." [25] The *Restatement (Third) of Trusts* enunciates a broad definition of charitable trusts, providing that

> [a] trust purpose is charitable if its accomplishment is of such social interest or benefit to the community as to justify permitting the property to be devoted to the purpose in perpetuity and to justify the various other special privileges that are typically allowed to charitable trusts.[26]

This broad definition of charitable trust is consistent with the broad common law definition of charity we have applied in other con-

texts.[27] Within this broad conception of charitable purposes, the Department's grant of a permit to Earth to use proceeds for the Earth Cycle Program is not an abuse of discretion.[28] The stated purpose of Earth's programs, "to awaken groups to the importance of a clean environment and to teach lifestyles which support a clean environment," falls within the range of uses permitted by the statute. The Earth Cycle Program, which provided free bicycles for use by the general public, rationally falls within the organization's stated purpose of teaching lifestyles that support a clean environment. Moreover, as the superior court found, the Department could reasonably have determined that riding bicycles promotes health and alleviates traffic, both of which are public concerns and provide social interest or benefit to the community. The Earth Cycle Program is rationally related to the objectives of the organization, and those objectives fall within the broad range of charitable purposes envisioned by the statute.[29] We therefore also reject Roberts's argument that the superior court erred by giving the words "public concern" greater importance than other terms in the statute. The superior court properly interpreted the statute to allow a broad array of charitable programs, including the Earth Cycle Program.

■■ Roberts argues that the superior court decided this issue on an unargued theory. But the State made a similar argument before the superior court when it noted Earth's objective "to teach and practice individual lifestyles which enhance clean earth, air and water." The State contended that "[i]t is certainly conceivable that a person using a free bike might decide to adopt a

24. AS 05.15.150(a).

25. 25 P.3d 689, 693 (Alaska 2001).

26. RESTATEMENT (THIRD) OF TRUSTS § 28 cmt. a (2003). The purposes of charitable trusts identified in the Restatement largely mirror those of the statute, and include the relief of poverty, the advancement of religion, the promotion of health, government and municipal purposes, and other purposes that are beneficial to the community. *Id.* at § 28.

27. *See, e.g., Fairbanks N. Star Borough,* 88 P.3d at 132.

28. Because we hold that issuance of the permit was consistent with the statutory scheme establishing a charitable trust, we reject Roberts's argument that the program is inconsistent with the State's position in *Botelho v. Griffin.*

29. Roberts's argument, unsupported by any authority, that the program is over and underinclusive does not apply. As the State correctly notes, the statute does not require that all proceeds be dedicated to poor citizens.

lifestyle that promotes ecological values." Moreover, Roberts addressed the program's impact on traffic in his summary judgment memorandum.

■ We reject Roberts's argument that quasi-estoppel precludes the State from arguing that the program is charitable.[30] Quasi-estoppel, which applies when a party advances a position so inconsistent with a previous position that it would be unconscionable to allow the party to assert the second position,[31] is inapposite. The crux of Roberts's argument appears to be that the Department should be estopped from defending its action because of its refusal to explain its decision in writing and because Deputy Director Larry Meyers allegedly told the Ombudsman that an organization need be only a "qualified organization," and not a charitable organization, to qualify for a permit. But the State is not taking an inconsistent position; it has consistently maintained that Earth qualified for a permit.[32] Any slight variations in the State's explanation—such as whether Earth was a "charitable organization" or fell into the more broad category of "qualified organization"—do not rise to the level of inconsistency or unconscionability required for application of quasi-estoppel.

■ Roberts also argues that the superior court erred by rejecting his argument that federal law preempts state law and does not allow the permit program to extend to the Earth Cycle Program. Roberts maintains that because Earth is a tax exempt organization under 26 U.S.C. § 501(c)(3), federal law preempts any state law that would permit Earth to use gaming proceeds without a demonstration of "operational nexus"

between how the proceeds are used and the organization's charitable goals. But as authority cited by Roberts recognizes, conflict preemption applies only where "it is impossible for a private party to comply with both state and federal law," and where " 'under the circumstances of [a] particular case, [the challenged state] law stands as an obstacle to accomplishment and execution of the full purposes and objectives of Congress.' "[33] Because Roberts does not allege that it would be impossible for an entity to comply with both state gaming laws and federal laws of tax exemption, conflict preemption does not apply. The superior court properly granted summary judgment for the State with respect to the "limitation on use of proceeds" provision.

**2. Issuance of the permit did not violate the statute's satisfactory proof requirement.**

■ Roberts argues that the permit also violated gaming statutes because the State approved Earth's permit without "satisfactory proof" that the permit would not be detrimental to the bests interests of the public. The satisfactory proof requirement is found in AS 05.15.140(a), which provides:

> The department may not issue or renew a permit except upon satisfactory proof that the applicant is a municipality or qualified organization, the activity may be permitted under this chapter, and the issuance of a permit is not detrimental to the best interests of the public. Upon request of the department, the applicant shall prove conclusively each of these requirements before a permit may be issued or renewed.

**30.** The State argues that Roberts waived this argument, along with several other arguments, because he relied on incorporated material from his memoranda before the superior court. But because pro se litigants are held to less demanding standards and because Roberts's briefing before this court adds to his arguments below, we do not consider Roberts's arguments waived and address the merits. *See, e.g., Gilbert v. Sperbeck,* 126 P.3d 1057, 1062 (Alaska 2005) (noting that we hold pro se litigants to less demanding standards).

**31.** *Keener v. State,* 889 P.2d 1063, 1067 (Alaska 1995).

**32.** *Cf. Brandal v. State, Commercial Fisheries Entry Comm'n,* 128 P.3d 732, 741 (Alaska 2006) (holding that quasi-estoppel did not apply where the Commission had consistently advanced the position that appellant did not qualify for a permit).

**33.** *Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 372–73, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000) (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)).

Roberts argues that the permit was detrimental to the best interests of the public because " 'no benefit to society' accrues when government provides tourists with recreation that they would otherwise pay for." But the superior court found that Roberts was equating "his business interests and profits with the 'best interests of the public.' " The superior court further determined that the Department of Revenue had a reasonable basis for its grant of a permit to Earth and concluded that "[e]ven if this court substituted its judgment, and applied the law to the undisputed facts, approving a permit to provide free bicycles to the public is not detrimental to the best interests of the public."

In the space for "Dedication of Net Proceeds," Earth's application indicated that "[t]he net proceeds will be used to awaken social, political, and fraternal groups to the importance of clean earth, air, and water; to teach and practice individual lifestyles which enhance clean air, earth, and water; to operate the Earth Cycle Program and to distribute food which is presently being wasted in the State of Alaska." [34] This information was provided "under penalty of unsworn falsification."

Based on this information provided by Earth, combined with the brief explanation of intended uses of the proceeds in the application, Earth's status as a nonprofit organization at the time, and the absence of any information to suggest that the use of proceeds would be detrimental, the Department reasonably determined that Earth provided satisfactory proof that the permit would not be detrimental to the public's best interests.

As the superior court noted, Roberts's argument that the program harmed the public interest relies on the assumption that something detrimental to his business interests would be detrimental to the public interest. But even if the program had interfered with his business—a fact that was not established—such interference does not render the program detrimental to the public interest as a whole. [35]

Roberts does not allege that anything in Earth's application should have suggested to the Department that issuance of the permit would be detrimental to the public interest. Rather, he suggests the Department should have asked different questions and obtained more information from Earth before issuing the permit. But the statutory scheme extends discretion to the Department to determine how to evaluate permit requests. [36] In other contexts where an agency has considerable discretion, we have been reluctant to intrude on agency decision making. For example, in *Vick v. Board of Electrical Examiners*, a private citizen sought to compel the board to file an accusation against another party. [37] We declined to extend this power to a private citizen, noting that to allow private citizens to compel the board to file accusations would likely create an enormous burden on public officials. [38] We reasoned that "[j]udicial intrusion into areas traditionally committed to executive discretion would make the processes of government more cumbersome and less efficient. In the absence of obvious and compelling reasons, that is a result which should be avoided." [39]

Although Roberts does not seek enforcement action, our reasoning in *Vick* applies. Roberts's interpretation of the "substantial proof" requirement would impose a much higher standard of proof than the Department's interpretation. In this case, the legis-

---

34. This information mirrors that listed on Earth's Articles of Incorporation. Earth indicated on its application that it was a 501(c)(3) charitable organization, and the superior court found that Earth was tax exempt for the period in question.

35. Roberts argues that the State's position in *Botelho v. Griffin* entitles him to summary judgment on this basis. But *Griffin* held that the gaming statutes create a charitable trust, and charitable trusts broadly define the public interest. 25 P.3d at 693. *Griffin* buttresses the superior court's holding.

36. AS 05.15.140(a) provides that "[u]pon request of the department, the applicant shall prove conclusively each of these requirements before a permit may be issued or renewed."

37. 626 P.2d 90, 92 (Alaska 1981).

38. *Id.* at 95.

39. *Id.*

lature has delegated discretion to the Department to determine whether a permit would be detrimental to the public interest and to assess the information necessary to support its determination. The "public interest" is a vague concept and requires the Department to weigh complex public policies, particularly where gaming is involved. Where such delegation has occurred and where Earth's application on its face does not suggest it would be detrimental to the public interest, the Department did not abuse its discretion by determining that the "satisfactory proof requirement" was met. While we do not suggest that a case could not arise where the substantial proof requirement was clearly not met, this is not such a case. The superior court properly granted summary judgment for the State on Roberts's claim that issuance of the permit violated the satisfactory proof requirement of AS 05.15.140(a).

### D. The Superior Court Properly Granted Summary Judgment to the State on Roberts's Nonstatutory Claims.

#### 1. Issuance of the permit did not violate public policy, fiduciary or statutory duties.

▇ Roberts argues that the State's grant of a permit to Earth violated public policy. He cites a federal statute (the declaration of policy of the United States Small Business Administration), a state statute (AS 10.15.565),[40] and *DeArmond v. Alaska State Development Corp.*,[41] as bases for public policies allegedly violated by issuance of the permit.

The superior court relied on *Camps Newfound/Owatonna, Inc. v. Town of Harrison, Maine*[42] for the proposition that nonprofit organizations may engage in commerce and compete with for-profit entities. The court concluded that no public policy prohibits nonprofit entities from competing in the marketplace and granted summary judgment for the State on the claim for violation of public policy.

We agree. As explained above, we uphold the superior court's ruling that issuance of the permit did not violate gaming statutes. Those statutes embody the public policy of gaming as announced by the legislature. Because we hold that issuance of the permit was consistent with those statutes, it was therefore consistent with the legislature's policy. Roberts's claim is without merit.

▇ We also uphold the superior court's grant of summary judgment to the State on Roberts's claims of bad faith and breach of fiduciary and statutory duties. On Roberts's bad faith claim, the superior court noted that "it is not clear what claim is being pled" but reasoned that "the tort of bad faith arises in the context of an insurer and insured" and was inapposite. Roberts failed to provide us with any legal basis for his claim.

▇ Moreover, as the superior court noted, even if there were an applicable bad faith cause of action, Roberts's bad faith claim depends on the notion that the State made a mistake and refused to correct it. Because we hold that issuance of the permit complied with statutory requirements, we agree with the superior court that the Department made "no mistake in the issuance of the permit ... [and therefore had] no duty to correct any mistake."

▇ Similarly, Roberts's claims for breach of statutory and fiduciary duties also fail. We assume without deciding that such claims have a legal basis. But we hold that the State acted in accordance with the gaming statutes in issuing the permit, and com-

**40.** Roberts cites AS 10.15.565 of the Alaska Cooperative Corporation Act, but the page he references from his summary judgment motion below quotes the text of AS 10.15.570, entitled "Declaration of public policy that cooperatives are not in restraint of trade." Roberts's motion quotes the statute's provision that provides:
It is the public policy of the state to encourage the efficient production and distribution of agricultural and other products derived from its natural resources or labor resources.

**41.** 376 P.2d 717, 721–22 (Alaska 1962) (holding that appropriation of funds for the Alaska State Development Corporation was consistent with the public purpose clause of the Alaska Constitution and noting that encouraging new business was a legitimate public purpose).

**42.** 520 U.S. 564, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997).

pliance with the statute negates any claim for breach of statutory or fiduciary duty.

### 2. Issuance of the permit did not violate Roberts's constitutional rights.

■ Roberts argues the State was not entitled to summary judgment on his claim that the State violated his substantive due process right to gainful employment and to earn a living or his claim that the State violated his fundamental right to earn a living in violation of article I, section 1 of the Alaska Constitution and the Privileges and Immunities Clause of the United States Constitution. He argues that the superior court erred by applying rational basis review to the legislature's enactment of the gaming laws. He also contends that his challenge was directed not at the gaming statutes, but rather at the executive branch's authorization of the Earth Cycle Program. The superior court concluded that the statute met rational basis scrutiny.[43]

■ We uphold the superior court's ruling. Under our jurisprudence, rational basis is the appropriate test unless a fundamental right is at issue; the party seeking to establish a violation under rational basis review has a heavy burden.[44] Not only has Roberts failed to articulate how the statutes violate his right to earn a living,[45] but the State identified a rational purpose for the gaming laws—to permit qualified organizations to raise money through authorized gaming activities.

■ Roberts argues that the superior court misread his argument as a challenge to the statutes and failed to recognize that he challenged executive action, but he does not explain why the State is not entitled to summary judgment on a challenge to executive action. The Earth Cycle Program did not prevent Roberts from operating his own business—the most generous reading of the facts suggests at most that the Earth program competed with that business. Not only did Roberts fail to show that his right to earn a living was infringed upon, but he also failed to meet the heavy burden of showing that the Department's actions in granting the permit to Earth were not rationally related to the purpose of the program it administered. Moreover, our holding that issuance of the permit was consistent with the statute forecloses any debate over whether the Department acted rationally in issuing the permit.

■ We also uphold the superior court's grant of summary judgment on Roberts's privileges and immunities claim. The Privileges and Immunities Clause "does not ... protect the citizens of a State against the legislative power of their own State."[46] Roberts does not allege that he is an out-of-state citizen adversely affected by this state's statute or program. The privileges and immunities clause does not restrict the State's actions in this case. The superior court properly granted summary judgment to the State.

### E. The Superior Court Did Not Abuse Its Discretion When It Ruled that Roberts Did Not Qualify as a Public Interest Litigant.

■ The superior court awarded $5,225 in attorney's fees to the State as the prevailing party. Roberts argues that he should be considered a public interest litigant. Because Roberts filed this case in March 2003,[47] the four-factor test for public

---

43. The superior court described these claims as "difficult to decipher" but concluded that Roberts was alleging that the "gaming statutes violate [Roberts's] right [to] earn a living by allowing non-profit entities to compete with his for-profit business."

44. *See Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough,* 527 P.2d 447, 452 (Alaska 1974); *see also Dunn v. Municipality of Anchorage,* 100 P.3d 905, 909 (Alaska App.2004). Roberts's brief does not assert that the right to earn a living is a fundamental right.

45. Judge Tan's ruling notes that Roberts "continues to run his business and that right has not been taken away.... [T]he burden to Mr. Roberts ... [—] competition [—] is not an unreasonable burden."

46. *Craigmiles v. Giles,* 110 F.Supp.2d 658, 665 (E.D.Tenn.2000), *aff'd,* 312 F.3d 220 (6th Cir. 2002) (holding that statute at issue did not violate the Privileges and Immunities Clause).

47. In May 2003 the legislature passed House Bill 145, which amended AS 09.60.010 to prohibit discrimination in the award of attorney's fees

interest litigant status applies. This test asks: (1) is the case designed to effectuate strong public policies; (2) would numerous people benefit if the litigant succeeded; (3) could only a private party have been expected to bring the suit; and (4) would the litigant have lacked sufficient economic incentive to file suit? [48]

Roberts argues that he meets all four factors of the test. He contends that he advances public policy because the case related to statutory language on matters of public welfare. He argues that the second factor is met, contending that numerous people benefit from the case because "all citizens benefit when the State's legal position is consistently applied and transparently explained in writing." He argues that the third and fourth factors are met, maintaining that he had no economic incentive because once "assigned economic injury was removed from the case, the only claims that could possibly remain are public interest claims."

The superior court found that it was "doubtful" but "conceivable" that the first factor was met, but concluded that the second factor was not met because the case would only benefit businesses that rent bicycles in downtown Anchorage. The court found that although the third factor was "perhaps" met, Roberts could not meet the fourth factor because he had economic incentive to sue. Because the superior court's decision turned on the fourth factor, we focus our analysis on that factor.[49] The superior court's finding that Roberts had economic

incentive to sue is consistent with our decisions in *Abbott v. Kodiak Island Borough Assembly*[50] and *Stein v. Kelso*.[51] In *Abbott*, several homeowners appealed a zoning decision of the Kodiak Assembly, arguing that it amounted to an unconstitutional taking of property.[52] The superior court upheld the Assembly's decision and found that the homeowners did not qualify as public interest litigants. In affirming the decision, we reasoned that where homeowners "believed the economic harm facing them was so substantial that they felt they had a viable taking without just compensation claim," the superior court's finding that owners had an economic interest in litigation was not an abuse of discretion.[53] Similarly, in *Stein v. Kelso*, we upheld an award of attorney's fees against miners who challenged an administrative permit decision as an unconstitutional taking.[54] Noting that the miners' pleadings sought a ruling that they had "lost their property rights and must be justly compensated," we rejected the miners' claim that they had no economic interest in the suit.[55]

Like the plaintiffs in *Stein* and *Abbott*, Roberts's initial complaint requested personal economic relief. As the State recognizes, this suggests that Roberts did not lack financial incentive to bring suit. Roberts suggests that he became a public interest litigant after the superior court's order dismissing all claims for relief, except declaratory relief. While it is true that Roberts did not abandon his suit after the financial claims were eliminated, he also appeals the

---

"based on the nature of the policy or interest advocated by the party, the number of persons affected by the outcome of the case, whether a governmental entity could be expected to bring or participate in the case, the extent of the party's economic incentive to bring the case, or any combination of these factors." Ch. 86, § 2, SLA 2003. The act "applies to all civil actions and appeals filed on or after" September 11, 2003. Ch. 86, § 4, SLA 2003. Because Roberts filed the complaint in this case on March 14, 2003, this case predates the effective date of the statute, and the previous public interest litigant doctrine applies.

**48.** *Abbott v. Kodiak Island Borough Assembly*, 899 P.2d 922, 923 (Alaska 1995).

**49.** The superior court also found that Roberts's case benefitted only downtown bicycle renters.

While this is true of his requests for compensatory damages, Roberts's request for declaratory relief concerning the scope of the gaming statutes could benefit a larger population. But we need not address this issue because the superior court's ruling on the fourth factor was not an abuse of discretion.

**50.** 899 P.2d 922.

**51.** 846 P.2d 123 (Alaska 1993).

**52.** 899 P.2d at 923.

**53.** *Id.* at 925.

**54.** 846 P.2d at 127.

**55.** *Id.*

superior court's ruling that the assignment failed. This assignment ruling is the basis for the superior court's elimination of all but the claim for declaratory relief; presumably if we had reversed it, Roberts's claims for compensatory damages could be viable. Given his pursuit of compensatory relief in this initial claim and indirectly in this appeal, the superior court's ruling on public interest litigant status was not an abuse of discretion.

## IV. CONCLUSION

We hold that the superior court properly granted summary judgment for the State on Roberts's remaining claims, properly dismissed the assigned claims as invalid, and properly concluded that Roberts was not a public interest litigant. We therefore AFFIRM the decision of the superior court.