BROOKWOOD AREA HOMEOWNERS ASSOCIATION, INC., Area G Home and Landowners Organization, Inc., Bruce Chadwick and Peter Johnson, Appellants/Cross-Appellees,

v.

MUNICIPALITY OF ANCHORAGE, Appellee,

and

Q & O # 2, a Partnership, Appellee/Cross-Appellant.

Nos. S–573, S–629.

Supreme Court of Alaska.

July 19, 1985.

1318

James T. Brennan, Hedland, Fleischer & Friedman, Anchorage, for appellants/cross-appellees.

Jerry Wertzbaugher, Mun. Atty., Thomas F. Klinkner, Asst. Mun. Atty., Anchorage, for appellee, Municipality of Anchorage.

Peggy A. Roston, W. Richard Fossey, Bankston & McCollum, Anchorage, for appellee/cross-appellant, Q & O # 2, a Partnership.

D. John McKay, Middleton, Timme & McKay, Anchorage, for amici curiae, Anchorage Daily News and Alaska Press Club.

Russell A. Nogg, Henderson & Nogg, P.C., Anchorage, for amici curiae, Builders Industry Ass'n of Anchorage, Inc. and J & P Investments, Inc.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

MOORE, Justice.

In this case, a quorum of the Anchorage Municipal Assembly met privately with a developer, the Quadrant Development Company (Quadrant),[1] to discuss in detail its application for rezoning. The application for rezoning was scheduled for a public hearing one week after the private discussion at the Quadrant offices. After the

1. Appellee Q & O # 2, a partnership, owned 60 acres of property in south Anchorage. Qua- drant Development Company acted as the partnership's agent for development purposes.

public hearing, the Assembly decided to reverse the Planning & Zoning Commission's decision to reject Quadrant's request for rezoning. The Assembly then passed a rezoning ordinance, A.O. 83–134, allowing the development to proceed in a modified form.

The Brookwood Area Homeowners' Association (Brookwood) alleged that the Quadrant meeting violated the Open Meetings Act (OMA) and that the rezoning ordinance should be held void. After an expedited trial, the trial court held that there was no "meeting" at the Quadrant office for purposes of the OMA. Alternatively, the court held that there was no "action" taken at the Quadrant meeting and therefore the remedy of the OMA did not apply. In another alternative holding, the court stated that the Quadrant meeting was harmless error because Brookwood had an opportunity to present evidence at a subsequent public hearing. Finally, the court held that the public hearing cured any violation of the OMA. Brookwood appealed the trial court's decision. We reverse the trial court's decision and hold the rezoning ordinance at issue void under the OMA.

## I. FACTS AND PROCEEDINGS

On November 11, 1982, Quadrant applied to the Municipality of Anchorage to rezone its property from R–6 (Suburban-Residential) to a combination of R–7 (Intermediate Residential) and R–1 (Single Family Residential) and R–3 S.L. (Multi-Family Residential). After a hearing on May 5, 1983, the Planning & Zoning Commission unanimously rejected the request for rezoning. Quadrant then requested a public hearing before the Anchorage Municipal Assembly in an attempt to reverse the Planning & Zoning Commission's decision. The hearing was originally scheduled for August 16, 1983 but was postponed until August 30 and rescheduled for September 6.

On August 10, 1983, Quadrant met with Brookwood members to discuss its development project. The main topic of discussion was the density of Quadrant's proposed development. After the meeting, Quadrant called all eleven members of the Assembly to arrange an informational presentation about the project at Quadrant's office. Quadrant arranged the meeting because of its concern about Brookwood's opposition to the project. In addition, Quadrant learned that individual Brookwood members had already contacted Assembly members about the rezoning measure.

On August 24, 1983, one week before the rescheduled public hearing, six of the eleven Assembly members attended a private presentation at Quadrant's office. Assembly members who attended the meeting explained that their general purpose was to obtain more information about the project and the rezoning application. Quadrant's development manager, Angie Dugick, began the presentation. Various Assembly members interrupted with questions after a few minutes and the presentation became "an interchange with questions and answers." Assembly member Smith characterized it as a "free-wheeling kind of a conversation" concerning the issues of density, drainage and buffer zones for the property. At one point, Assembly member Angvik asked whether the project's density could be reduced. There is a dispute whether Quadrant agreed to a reduction at the meeting. Two Assembly members testified that there had been such an agreement; Assembly member Chiei stated that Angvik had suggested reducing the proposal from 560 dwelling units to "the 300 range." Other members testified that Quadrant had rejected Angvik's proposal. The trial court concluded that Quadrant had not agreed to reduce density at the meeting. In any event, Quadrant learned of some of the concerns the Assembly members had regarding the proposed project during this meeting. For example, Angvik testified that she did not tell Quadrant in advance that she would propose an amendment to reduce the development's density. However, she did testify:

If Quadrant was astute they would have noticed that when I asked the question at lunch, why don't you reduce the density? that something like that might happen.

At the scheduled Assembly meeting on August 30, opponents of the rezoning learned that Assembly members had met in a group with Quadrant representatives. At the beginning of the September 6 public meeting, several Assembly members confirmed that the private meeting had occurred but they revealed no details of the meeting. Angie Dugick of Quadrant began the public hearing with a five-minute presentation on the project and answered several questions regarding drainage of the property.[2] Subsequently, many individuals testified against the rezoning ordinance.

The Assembly reconvened on September 12 to discuss the rezoning issue. After discussion, Angvik moved to amend the rezoning ordinance to reduce the total number of dwelling units from 560 to 360, and to impose a 20-foot buffer strip on the project. Quadrant agreed to both limitations. In another amendment, Quadrant was required to submit its drainage plans for the development to the Municipal Public Works Department for approval. The Assembly passed the rezoning proposal as amended by a vote of 7–3. Four of the six Assembly members present at Quadrant's private meeting voted for the amended ordinance, while one member voted against it and one was absent.

Brookwood filed suit against the Municipality of Anchorage on November 18, 1983, alleging that the Quadrant meeting violated Alaska's Open Meetings Act (OMA), AS 44.62.310, and Anchorage's Public Meetings Ordinance, A.O. 1.25.010.[3] Quadrant moved to intervene as defendant and its motion was granted. Less than four months after the suit was filed, the superi-

or court, sitting without a jury, heard the case and held that no meeting took place at the Quadrant office within the meaning of the OMA. The court entered extensive findings of fact and conclusions of law, upholding the municipal rezoning ordinance.

## II. DISCUSSION

### 1. "Meeting" under the Open Meetings Act

The trial court held that no "meeting" took place at Quadrant's office under the OMA. For the purposes of AS 44.62.310, the court stated that:

A meeting ... must therefore consist of a gathering of a number of Assembly members who intend to act, have the capacity to act, and do act collectively to carry on the business of the Assembly as a whole.

Applying its definition of a meeting to the Quadrant presentation, the court found that only the requirement of a capacity to act was satisfied.

The OMA does not define the word "meeting." AS 44.62.310 provides in pertinent part:

Agency meeting public. (a) *All meetings of a legislative body,* ... including subordinate units of the above groups, of the state or any of its political subdivisions, including but not limited to municipalities, ... supported in whole or in part by public money or authorized to spend public money, *are open to the public* except as otherwise provided by this section.

. . . .

(e) *Reasonable public notice* shall be given for all meetings required to be open under this section.

(f) *Actions taken contrary to this section are void.*

(Emphasis added.)

In addition, AS 44.62.312 sets out the state policy regarding meetings of govern-

---

**2.** Testimony at public hearings pertaining to municipal ordinances is strictly limited to five minutes for representatives of groups and three minutes for individuals.

**3.** Because our decision concerning the OMA, AS 44.62.310, is dispositive of the issues raised by Brookwood, we do not address the scope of A.O. 1.25.010.

mental units such as the Anchorage Municipal Assembly:

> (2) it is the intent of the law that *actions* of those units be taken openly and that their *deliberations* be conducted openly;
>
> . . . .
>
> (5) the *people's right to be informed* shall be protected so that they may retain control over the instruments they have created.

(Emphasis added.) AS 44.62.312(b) also expressly provides that exceptions to the OMA shall be construed narrowly in order to effectuate the policy of the OMA.

■ Brookwood argues that the trial court's narrow construction of the OMA conflicts with the statute's legislative purpose and with modern judicial construction of broadly worded open meetings acts. In *University of Alaska v. Geistauts*, 666 P.2d 424 (Alaska 1983), for example, we held that AS 44.62.310(a) applied to governmental units such as the University's tenure committee whether "advisory or otherwise." *Id.* at 428. The statute's language mandated that its scope not be limited to decision-making bodies only. We also noted that:

> Modern public meetings statutes reject the argument that only the moment of ultimate decision must be subject to public scrutiny, and require that preliminary deliberations be open as well. *See Town of Palm Beach v. Gradison*, 296 So.2d 473, 477 (Fla.1974); *Sacramento Newspaper Guild v. Sacramento Cty. Bd. of Supervisors*, 263 Cal.App.2d 41, 69 Cal. Rptr. 480, 485, 487 (Cal.App.1968).

*Id.* at 428 n. 6. Although not cited in *Geistauts*, AS 44.62.312(a)(2) does specifically require that government *deliberation* as well as government action be conducted openly.

**4.** AS 44.62.312(a) is based on Cal. Gov't Code § 54950, discussed in *Sacramento Newspaper Guild*, 69 Cal.Rptr. at 484.

**5.** Several state courts have followed the reasoning of the court in *Sacramento Newspaper Guild* and have held that informal informational sessions called to discuss public business were meetings under the state's open meetings act.

In *Sacramento Newspaper Guild*, 69 Cal.Rptr. 480, the county board of supervisors met at a luncheon gathering to discuss a social workers' strike against the county. Newspaper reporters were denied admission to the discussion. The appellate court held that the luncheon discussion was a meeting under the Brown Act, California's open meetings act. The Brown Act provides that government deliberation as well as action must occur openly and publicly. Cal. Gov't. Code § 54950 (West 1983).[4] The court reasoned that "deliberation connotes not only collective discussion, but the collective acquisition and exchange of facts preliminary to the ultimate decision." *Id.* at 485. Therefore, a deliberative gathering of the county supervisors was a meeting, even if confined to investigation and discussion. The court explained its rationale in the following manner:

> An informal conference or caucus permits crystallization of secret decisions to a point just short of ceremonial acceptance. *There is rarely any purpose to a nonpublic pre-meeting conference except to conduct some part of the decisional process behind closed doors.* Only by embracing the collective inquiry and discussion stages, as well as the ultimate step of official action, can an open meeting regulation frustrate these evasive devices. . . . Construed in the light of the Brown Act's objectives, the term "meeting" extends to informal sessions or conferences of the board members designed for the discussion of public business.

*Id.* at 487 (emphasis added, footnote omitted).[5]

■ In this case, a quorum of the Anchorage Municipal Assembly met privately

*See, e.g., Town of Palm Beach v. Gradison*, 296 So.2d 473, 477 (Fla.1974) (open meetings act includes meeting of advisory citizen committee on zoning); *People ex rel. Difamis v. Barr*, 83 Ill.2d 191, 46 Ill.Dec. 678, 414 N.E.2d 731, 735 (1980) (Democratic party caucus meeting called to discuss matters that the city council would later consider constituted a meeting); *City of*

with a developer, Quadrant, to discuss in detail its application for rezoning.[6] The rezoning ordinance was scheduled for public hearing one week later. AS 44.62.312 clearly requires that such "deliberations" be conducted publicly. As Assembly member Smith conceded, the Quadrant meeting could have been held as a scheduled work session of the Anchorage Assembly open to the public. Without public access to the Quadrant meeting, the "people's right to be informed" under the OMA was severely limited. In *State ex rel. Lynch v. Conta*, 71 Wis.2d 662, 239 N.W.2d 313, 330–331 (1976), the court stated:

> The likelihood that the public and those members of the governmental body excluded from the private conference may never be exposed to the actual controlling rationale of a government decision thus defines such private quorum conferences as normally an evasion of the law. The possibility that a decision could be *influenced* dictates that compliance with the law be met.

(Emphasis in original.)

■ The trial court erred in ruling that the Quadrant presentation was not a meeting under the OMA. We reverse its ruling and hold that a "meeting" includes every step of the deliberative and decision-making process when a governmental unit meets to transact public business.[7]

### 2. Remedy under the Open Meetings Act

### (A) What constitutes "action" under AS 44.62.310(f)?

■ In addition to narrowly construing "meeting" under the OMA, the trial court also restricted the remedy available under the OMA by narrowly interpreting the term "action" in AS 44.62.310(f):

> AS 44.62.310(f) states that action taken contrary to the Alaska Open Meetings Act is void, but no action was taken at the Quadrant office.

Under this construction of the OMA, there would be no remedy to deter Assembly members from privately meeting for discussion, investigation or deliberation about public business as long as the Assembly reached no decision at that private meeting. Such a construction ignores the statement of legislative purpose in AS 44.62.312, which states that not only government action but also government deliberation must be conducted in public. The trial court erred in its narrow construction of "action." Action must encompass the Assembly's fact-gathering and deliberative sessions relating to public business. *See Town of Palm Beach v. Gradison*, 296 So.2d 473 (court voided town council's comprehensive zoning plan because advisory citizens' planning commission held private meetings).

---

*New Carrolltown v. Rogers*, 287 Md. 56, 410 A.2d 1070, 1079 (1980) (deliberative and decision-making process must be conducted publicly, since every step of the process constitutes the consideration or transaction of public business); *St. Cloud Newspapers, Inc. v. Community Schools*, 332 N.W.2d 1, 6 (Minn.1983) (informational seminar for school board regarding long-range planning for school district must be open to public); *Orange County Publications v. Council of City of Newburgh*, 60 A.D.2d 409, 401 N.Y.S.2d 84, 89 (1978) (informal work session of city council four days before city council meeting considered a meeting); *State ex rel. Lynch v. Conta*, 71 Wis.2d 662, 239 N.W.2d 313, 330 (1976) (when members of government body meet in quorum to receive testimony or discuss

public business, a presumption arises that their action seeks to evade the open meetings act).

6. Given the strong statement of public policy in AS 44.62.312, the question is not whether a quorum of a governmental unit was present at a private meeting. Rather, the question is whether activities of public officials have the effect of circumventing the OMA.

7. Quadrant's representatives could have met with each Assembly member individually to discuss their development project and to lobby for the passage of a rezoning ordinance without violating the Open Meetings Act.

**1324**

(B) Was the Quadrant presentation to the Assembly harmless error because Brookwood had the opportunity to present its views at a public meeting?

In another alternative holding, the trial court deemed the Quadrant presentation harmless error because (1) Brookwood had ample opportunity to express its views on the ordinance at public meetings, and (2) the plaintiffs were not prejudiced by the Quadrant presentation because all of the information was available to the plaintiffs before the September 6 public meeting. In *Hammond v. North Slope Borough*, 645 P.2d 750 (Alaska 1982), an advisory committee held meetings without public notice concerning an oil lease sale. We refused to void the Commissioner's ultimate leasing decision because his decision was independent of the committee's actions. In *University of Alaska v. Geistauts*, we explained that *Hammond* "presented a compelling fact situation in which a relatively insignificant violation of AS 44.62.310 was coupled with overwhelming prejudice which would have resulted from a conclusion that the five-year procedure leading up to the lease sale was void." 666 P.2d at 428. Accordingly, we concluded that the *Hammond* "harmless violation" doctrine should be invoked only in very limited circumstances.

■ In this case, the mere fact that Brookwood had an opportunity to present testimony at a subsequent public hearing does not render the Quadrant presentation harmless error. In *Alaska Community Colleges' Federation of Teachers v. University of Alaska* (hereafter *ACCFT*), 677 P.2d 886 (Alaska 1984), we reversed the trial court's determination that a subsequent public meeting validated a prior private meeting, even though the university sought to remedy its OMA violation with the public meeting. We held that a subsequent public meeting would serve as a proper remedial effort only if it "functioned as a true de novo consideration of the defective action." *Id.* at 891.

■ The "harmless violation" doctrine does not apply to the meeting at issue in this case. Brookwood contends that it would have presented different testimony at the public hearing if it had known the content of the Quadrant presentation. Unlike *Hammond*, the facts of this case do not demonstrate that the Assembly's ultimate decision was independent of the Quadrant presentation. Moreover, Brookwood filed an expedited challenge to the Assembly's action in this case, in contrast to the five-year delay in *Hammond.*

(C) Analysis of a remedy under *ACCFT*

Quadrant asserts that the public meeting on September 6 rectified any violation of the OMA caused by its presentation on August 24. In fact, Quadrant contends that if the final decision is made in compliance with the OMA and is not a summary approval or ratification of the prior illegal meeting, the trial court has discretion to uphold the final decision. According to Quadrant, since no decision was made at the August 24 meeting, the court's inquiry should be whether the decision makers independently reached their final decision with substantial public input.

The trial court's conclusions of law coincide with Quadrant's theory of the law. First, the trial court states that the public meeting on September 6 and the Assembly's public deliberation on September 12 serve the public policy considerations of the OMA. Second, the court concludes that:

> even if a decision took place on August 24, 1983, and the court specifically finds that no decision was made, there was a substantial reconsideration by the Anchorage Assembly on September 12, 1983. Even if the burden of proof falls on the Assembly and on defendant partnership to show that there was a fair and substantial reconsideration, the court finds that this burden has been met.

In *ACCFT*, 677 P.2d 886, we discussed the procedure that a trial court should fol-

low to decide whether a subsequent public meeting validated a governmental decision made at a meeting held in violation of the OMA. In that case, the University's Board of Regents held a closed executive session to discuss a university merger; in a subsequent public session, they voted to approve the merger. The trial court did not rule on the closed session's legality, but suggested instead that the board take public testimony on the merger and reconsider its previous decision. After the board heard public testimony, reviewed the merger and affirmed its earlier decision, the trial court held that the public meeting validated the merger. We reversed and remanded the case because the trial court did not analyze the problem in a manner necessary to serve the OMA's purposes.[8] *Id.* at 888–889.

■ If a public body acts in violation of the OMA, its actions are void. AS 44.62.310(f). To determine whether a subsequent remedial effort may validate an otherwise void action, we established the following approach. First, the plaintiff must show by a preponderance of the evidence that a violation occurred. *Id.* at 892. Second, if a violation is shown, the burden shifts to the defendant to show that a "substantial reconsideration" of the issue was made at a subsequent public meeting, i.e., "whether the validation meeting functioned as a true de novo consideration of the defective action." *Id.* at 891, 893. Third, if the defendant fails to meet this requirement, the court must decide whether invalidation of the governmental action is a proper remedy. To choose invalidation, the court must determine (a) that invalidation is a necessary prerequisite to actual reconsideration of the issue by the government, and (b) that invalidation will serve the public interest. In deciding the public

interest issue, the court should weigh the "remedial benefits to be gained in light of the goals of the OMA against the prejudice likely to accrue to the public." *Id.* at 893.

Quadrant seeks to limit the analytical approach of *ACCFT* to cases in which a decision was made at the prior illegal meeting. In light of AS 44.62.312(a)(2)'s statement that both governmental deliberations and actions must be public, Quadrant's reading of *ACCFT* is unduly narrow. Therefore, this case should be analyzed according to *ACCFT*.

■ Since the Assembly's deliberations at Quadrant's presentation constituted a meeting in violation of the OMA, the issue according to *ACCFT* is whether the September 6 public meeting validated the rezoning action. As Brookwood points out, however, Quadrant could not demonstrate that the public meeting was offered as a remedial measure to reconsider any action or deliberation by Assembly members at Quadrant's private presentation. "To the contrary, Assembly members stated affirmatively at the commencement of the September 6th public meeting that they saw nothing wrong with the prior Quadrant offices meeting in that all they had done was listen to a presentation." The Assembly members did not disclose any matters discussed at the private meeting. Under *ACCFT*, Quadrant failed to show that a "substantial reconsideration" of the issue was made.

■ In this case, invalidation of the rezoning ordinance is a necessary prerequisite to the Assembly's actual reconsideration of the issue. Under A.O. 21.20.040(B),[9] the Assembly cannot further restrict this zoning without Quadrant's ex-

---

8. In *ACCFT*, we stated:
The effectiveness of any later meeting designed to cure an OMA violation obviously depends on the seriousness of this violation. The more egregious the violation, the more closely a reviewing court should view efforts to remedy it.
*Id.* at 889.

9. A.O. 21.20.040 provides:
*Amendments to initial proposal.*
A. Area rezoning. A zoning map amendment initiated by the Assembly, the Planning Commission, or the Municipal Administration designed to redistrict or adjust a large area or neighborhood (as distinguished from a single

press agreement. Therefore, no "substantial reconsideration" by the Assembly is possible unless we first void the rezoning ordinance, A.O. 83–134.

Furthermore, a decision voiding the rezoning ordinance will serve OMA's remedial purpose by notifying state governmental bodies that the OMA will be strongly enforced. In contrast to the lengthy delay between the contested university merger and our ruling in *ACCFT*, Brookwood has not delayed in bringing the OMA issue before the court in this case. In addition, voiding an ordinance that rezoned a sixty-acre parcel does not result in prejudice to the public comparable to that posed in *ACCFT*. For these reasons, we hold that the rezoning ordinance, A.O. 83–134, is void under AS 44.62.310(f).

3. The Brookwood Area Homeowners' Association Qualifies as a Public Interest Litigant under Civil Rule 82

The trial court denied Quadrant's motion for attorney's fees under Civil Rule 82 because Brookwood is a public interest litigant. In its cross-appeal, Quadrant argues that Brookwood does not qualify as a public interest litigant for two reasons. First, Brookwood's motivation for bringing this lawsuit was at least partly economic. Second, the public interest is not served by attempts to overturn a valid governmental decision based on an alleged OMA violation.

In *Oceanview Homeowners' Association, Inc. v. Quadrant Construction and Engineering*, 680 P.2d 793, 799 (Alaska 1984), we reiterated the four criteria for identifying public interest suits:

(1) whether the case is designed to effectuate strong public policies; (2) whether, if the plaintiff succeeds, numerous people will benefit from the lawsuit; (3) whether only a private party could be expected to bring the suit; and (4) whether the litigant claiming public interest status would lack sufficient economic incentive to bring the lawsuit if it did not involve issues of general importance.

In *Oceanview*, a homeowners' association unsuccessfully sought to overturn a zoning board decision permitting continued use of an airstrip near the homeowners' properties. We reversed the trial court's award of attorney's fees because the association's appeal was "designed to vindicate a strong public policy in effectuating zoning ordinances." *Id.* at 799. Additionally, the association's consistent emphasis on health and welfare considerations, to the virtual exclusion of economic concerns, demonstrated that it would have lacked sufficient economic incentive to bring the lawsuit.

■■■ This case also meets the four criteria for public interest litigation. AS 44.62.-312 indicates the strong public policy behind effectuating the OMA. As we stated in *ACCFT*,

Open decision-making is regarded as an essential aspect of the democratic process: It is believed that public exposure deters official misconduct, makes government more responsive to its constituency, allows for greater public provision of information to the decision-maker, creates greater public acceptance of government action, and promotes accurate reporting of governmental processes.

*Id.*, 677 P.2d at 891. Second, a declaration that the Assembly violated the OMA will protect the "public's right to be informed" under AS 44.62.312 by encouraging public Assembly meetings. *See also ACCFT* at 891. Third, only private citizens would sue

---

subdivision or tract) may be amended in any manner, provided that all notices of the public hearing indicate the nature of the proposed rezoning and set forth the rule of this subsection regarding amendment.

B. Small area rezoning. A zoning map amendment initiated in any other manner or designed to redistrict an individual parcel or other area may not be amended by the Assembly unless the amendment would result in a more restrictive district classification and *any initiating property owners within the proposed district agree to such amendment in writing.* (Emphasis added.)

to enforce the OMA in this case because the government is the defendant. Finally, Brookwood claims that Quadrant's proposed development would not result in economic injury to its members. Therefore, Brookwood lacked the requisite economic incentive to bring the suit.

Brookwood qualifies as a public interest litigant. If attorney's fees were awarded against Brookwood, it would discourage future actions by citizens challenging violations of the OMA. *Anchorage v. McCabe*, 568 P.2d 986, 990 (Alaska 1977). By providing the remedy in AS 44.62.310(f), the legislature decided that governmental actions in violation of the OMA would be void. The state policy expressed in AS 44.62.312 mandates that the public interest in open government is more important than shielding all governmental action from legal challenge by citizens.

The decision of the superior court is REVERSED and REMANDED to determine attorney's fees for Brookwood as a public interest litigant.