**GOLD COUNTRY ESTATES PRESERVATION GROUP, INC., an Alaska Nonprofit Corporation, and William H. Cramer, individually, Appellants and Cross–Appellees,**

v.

**FAIRBANKS NORTH STAR BOROUGH, Appellee and Cross–Appellant.**

**Nos. S–13475, S–13525.**

Supreme Court of Alaska.

Feb. 10, 2012.

Peter J. Aschenbrenner, Aschenbrenner Law Offices, Inc., Fairbanks, for Appellants and Cross–Appellees.

Jill S. Dolan, Assistant Borough Attorney, A. René Broker, Borough Attorney, Fairbanks, for Appellee and Cross–Appellant.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

PER CURIAM.

## I. INTRODUCTION

Margery T. Kniffen, as Trustee for the Margery T. Kniffen Family Trust (Margery Kniffen), and Darrell Kniffen II, purchased an undeveloped tract in Fairbanks North Star Borough, planning to develop a subdivision. They also purchased a lot in Gold Country Estates, an existing subdivision adjacent to the undeveloped tract. The Kniffens sought a variance allowing them to construct a road across their Gold Country Estates lot to provide access to the planned subdivision. After hearing public testimony, the local Platting Board unanimously voted

to deny the variance based on safety concerns. But after a subsequent site visit, the Board reconsidered the variance request and approved it.

Gold Country Estates homeowners appealed to the Planning Commission, which held a de novo hearing and upheld the Platting Board's decision. The homeowners filed suit in superior court, arguing that the Platting Board denied them due process and violated the Open Meetings Act and that the proposed road violated Gold Country Estates' covenants. The superior court ruled that Gold Country Estates' covenants did not allow a Gold Country lot to be used as access for the new subdivision. Though the Kniffens' access proposal was defeated, Gold Country continued to pursue its due process and Open Meetings Act claims against the Borough. The superior court ultimately ruled in favor of the Borough on those claims, but denied the Borough's motion for fees and costs.

The homeowners now appeal, arguing that the superior court erred by not finding that the Platting Board denied them due process and violated the Open Meetings Act. The Borough cross-appeals, arguing that it was entitled to attorney's fees and costs. We affirm the superior court's grant of summary judgment in favor of the Borough on the homeowners' Open Meetings Act and due process claims, as well as the superior court's order declining to award attorney's fees.

## II. FACTS

Gold Country Estates, First Addition (Gold Country Estates) is a residential subdivision located northeast of Fairbanks and accessed by Goldmine Trail off the New Steese Highway. In April 2004 Margery Kniffen and her son, Darrell Kniffen, purchased a large undeveloped tract immediately south of Gold Country Estates to develop into Fox Bluffs Estates subdivision. The next month, they purchased Lot 5, Block 8 of Gold Country Estates; their plan was to access Fox Bluffs by building a road through Lot 5, Block 8 of Gold Country Estates.

Before the Kniffens could move forward with their development plan they needed Platting Board approval of a variance application and separate approval of their subdivision application. The variance would allow Fox Bluffs Drive to be constructed across Lot 5, Block 8 of Gold Country Estates, where it would intersect with Bullion Drive.[1]

The Kniffens' requests were placed on the October 27, 2004 Platting Board agenda. Notice of the meeting and the agenda were published on the Borough's website and in the Fairbanks Daily News–Miner, and 75 "Dear Property Owner" letters were mailed to Gold Country Estates residents and others who lived nearby. At the Platting Board meeting, the Kniffens requested a postponement of their application because three of the Platting Board's seven members were unable to participate.[2] The Board nonetheless heard public testimony on the Kniffens' proposals. Most of the testimony was from Gold Country Estates property owners opposed to the Kniffens' applications.

The Board convened its regularly scheduled meeting on November 17, 2004. Notice of the meeting and its agenda were published in the Fairbanks Daily News–Miner and on the Borough's website. Gold Country Estates residents did not receive "Dear Property Owner" letters in advance of the November 17, 2004 meeting. Borough staff presented a report recommending approval of the Kniffens' variance and subdivision applications with several conditions. The Board then heard public testimony. This testimony was largely against the Kniffens' variance application and included safety con-

---

1. Fairbanks North Star Borough Code (FNSBC) 17.100.040(c)(5) (renumbered by FNSB Ordinance 2005–10 § 2 (2005)). This opinion will cite to code provisions as they were numbered at the time of the Platting Board hearings, prior to renumbering in 2005.

2. The Platting Board convenes with seven regular members. At all times relevant to this appeal, the Board consisted of six members with one vacancy. The six regular members were William Mendenhall, Janet Matheson, Ronald McIntosh, Margery Kniffen, Oliver Backlund, and Margaret McCombs. Willie Bliss was an alternate member. Though Margery Kniffen was a member of the Platting Board during 2004, she did not participate in its decisions regarding the variance or subdivision application.

cerns about the proposed intersection. In particular, concern was expressed that the access plan was hazardous because the new road would intersect with Bullion Drive on a curve, where sight lines were inadequate. After the close of public testimony, the Board unanimously voted to deny the variance. The Board did not vote on the Kniffens' subdivision application because no legal access was available to Fox Bluffs without the variance. Later that evening, after voting to deny the Kniffens' variance, Platting Board member Janet Matheson submitted a written request for reconsideration of the Board's decision.[3]

Reconsideration was scheduled for the Board's next meeting on December 15, 2004, and the Board scheduled a site inspection of the proposed variance location for December 14, 2004. Notice of the site inspection was published on December 7, 2004 in the Fairbanks Daily News–Miner and on the Borough's website. Four board members, Mendenhall, Backlund, Bliss, and Matheson, along with three Borough staff members, the Borough engineer, and the transportation planner all attended the site visit. One of the visit's purposes was to consider whether the proposed intersection had safe sight distance. When the Board arrived at Lot 5, Block 8, they discovered Mr. Kniffen had trimmed back bushes and flagged the portion of the lot the Kniffens proposed to reserve in the final plat as a sight distance triangle easement. These steps enabled the Board to better assess whether the proposed intersection had adequate sight distance. Although Mr. Kniffen was present at the property during the Board's visit, the Board did not communicate with him.

The Board held its regularly scheduled December meeting the day after the site visit, on December 15, 2004. Notice of this meeting was provided by publication in the Fairbanks Daily News–Miner and on the Borough's website. Because reconsideration of the Kniffens' proposal was back on the agenda, "Dear Property Owner" letters were sent on December 7, 2004. The letters noti-

fied Gold Country Estates residents and other nearby homeowners that the Board would be reconsidering its November 17 decision denying the Kniffens' variance application.

At the December 15, 2004 meeting, a Board member moved to reconsider the November 17, 2004 decision to deny the variance. Before discussing the Kniffens' applications, the Board's Chairperson stated:

> As a point of information, the Board has visited the site and viewed the intersection and looked at the proposed access point for the subdivision . . . and looked at hazards and public safety issues since a majority of the public testimony that we had before dealt with the fact that the neighborhood considers the intersection directly beyond this access point to be hazardous.

After a short discussion, the Board voted 5–0 to approve the Kniffens' variance application. It also unanimously approved their subdivision application. The Board adopted findings of fact in support of its December 15, 2004 decision at its regularly scheduled meeting on January 26, 2005. The Board did not accept public comment at its December 15 or January 26 meetings.

Meanwhile, in December 2004, 16 Gold Country Estates homeowners, along with some neighboring residents from outside the Gold Country Estates subdivision, formed Gold Country Estates Preservation Group, Inc. (Gold Country), a non-profit corporation. On February 1, 2005, Gold Country filed an appeal of the Platting Board's decision to the Fairbanks North Star Borough Planning Commission.[4]

The Planning Commission heard Gold Country's appeal at a de novo hearing on April 19, 2005. The Planning Commission was given a staff report on the appeal; staff exhibits; Gold Country Estates First Addition protective covenants; Platting Board Rules of Order; applicable ordinances; copies of the "Dear Property Owner" letters; maps of the proposal; road, drainage, and soils information; the original Platting Board

3. The Platting Board's agendas state: "Any action taken during this meeting is subject to reconsideration during this meeting or at the next."

4. FNSBC 17.80.010.

staff report and recommended findings of fact; trails information; the Kniffens' attorney's written opinion; minutes and action letters from the Platting Board meetings; all written public comments received by the Planning Commission throughout the proceedings; and Gold Country's appeal, including attachments and citations. The Planning Commission also heard testimony from the Platting Board's staff, the public, the Kniffens, and an extensive presentation from Gold Country's counsel. At the conclusion of the hearing, the Planning Commission denied Gold Country's appeal by a vote of 6–2. On May 17, 2005, the Commission adopted findings of fact for Resolution AP 003–2005, which upheld the Platting Board's decision to grant the Kniffens' requested variance.

## III. PROCEEDINGS

Gold Country filed suit against the Borough in superior court alleging violations of the Open Meetings Act.[5] Gold Country's first amended complaint added the Kniffens as defendants and alleged that the Kniffens were threatening to violate Gold Country Estates' protective covenants. The Kniffens sought an order requiring individual members of Gold Country to ratify the action under Alaska Civil Rule 17.[6] On December 14, 2005, the superior court granted the Kniffens' motion and required "[a]t least one member of Gold Country, willing to bear the risks of litigation, [to] ratify the litigation within 30 days."

Gold Country filed a second amended complaint naming William H. Cramer, a real party in interest, as another plaintiff. On June 27, 2006, the superior court granted summary judgment in favor of Gold Country against the Kniffens, declaring that the Gold Country Estates covenant restricting lots to residential use was enforceable "to [the] extent the lots are not to be used to create driveways to other subdivisions."

The Borough made a Rule 68 offer of judgment on December 14, 2006, offering Gold Country $2,000 "in full and complete satisfaction of all of Plaintiff's claims against Defendant." Gold Country did not accept the offer. Instead, Gold Country filed a third amended complaint naming the Borough as the only defendant, re-alleging violations of the Open Meetings Act, and alleging for the first time violations of due process under the United States and Alaska Constitutions.

The superior court granted the Borough's motion for summary judgment on the Open Meetings Act claims on October 14, 2008. The superior court concluded that the Planning Commission's de novo hearing cured any Open Meetings Act violations that may have occurred in the Platting Board proceedings. Similarly, the court determined that because Gold Country had notice and an opportunity to be heard before the Planning Commission, any due process violation in the Platting Board proceedings had been cured. In a Sua Sponte Order of Clarification issued several months later, the superior court noted that "because notice of the date and time of the [December 14, 2004] inspection was given through the newspaper and the borough website, reasonable notice was given of the site inspection performed by the Platting Board.... Therefore, the site inspection performed by the Platting Board was not a violation of the Open Meetings Act."

The Borough filed a motion for Rule 68 or Rule 82 attorney's fees. Gold Country opposed the request for Rule 68 fees, but did not dispute that the Borough was entitled to up to 20% of its attorney's fees under Rule 82. Nevertheless, the superior court denied the Borough's motion for fees. The trial court refused to grant Rule 82 attorney's fees against Cramer because he had "joined the suit ... at the insistence of the Kniffen defendants, and [his] posture in the case was as an interested landowner solely as to those

---

5. AS 44.62.310. Gold Country also filed an administrative appeal of the Planning Commission's decision to the superior court, but that appeal was subsequently dismissed.

6. Civil Rule 17(a) provides: "Every action shall be prosecuted in the name of the real party in

interest.... No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest...."

private citizen defendants." The superior court denied the request for Rule 68 attorney's fees against William H. Cramer because the Borough's Rule 68 offer was not addressed to him. The Borough's motion for fees against Gold Country was denied because its suit was within the public interest, and because allowing the Borough to prevail on enhanced attorney's fees would "chill legitimate suits against the government" and "be against public policy."

The Borough moved for reconsideration on March 19, 2009, arguing that Cramer should be jointly and severally liable with Gold Country for any award of attorney's fees because Cramer was the real party in interest under Civil Rule 17. The Borough also argued that, regardless of whether the Rule 68 offer of judgment was operative as to Cramer, it was error to deny fees against Gold Country because Rule 68 is not limited to tort or business litigation and can be applied to suits against the government.

Reconsideration was denied on March 24, 2009 and both parties appeal. Gold Country argues that the superior court erred by not granting summary judgment on its due process claim, not granting summary judgment on its Open Meetings Act claim, and refusing, on mootness grounds, to analyze whether an Open Meetings Act violation occurred.[7] The Borough argues on cross-appeal that the superior court erred by denying its motion for attorney's fees.

## IV. STANDARD OF REVIEW

We review a grant of summary judgment de novo, "reading the record in the light most favorable to the non-moving party and making all reasonable inferences in its favor."[8] We will affirm a grant of summary judgment "when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."[9]

We review a superior court's award of attorney's fees for an abuse of discretion.[10] We will conclude there has been an abuse of discretion if, after reviewing the whole record, we are left with a definite and firm conviction that the superior court erred in its ruling.[11] "An offer of judgment's compliance with Rule 68 is a question of law, which we review independently."[12]

## V. DISCUSSION

### A. Appellants' Open Meetings Act Claims Are Moot, But We Reach Them To Resolve The Question Of Prevailing Party Status.

In its Sua Sponte Order of Clarification, the superior court observed that Gold Country's Open Meetings Act claims were rendered moot by the finding that the Planning Commission had performed "substantial reconsideration" of the challenged action. However, the superior court went on to observe that "questions about ... the Open Meetings Act are matters of public importance such that a finding on the question should be made without regard to it being moot." The court concluded that there was adequate notice of the site visit and therefore no Open Meetings Act violation. We agree

---

7. The basis of Gold Country's mootness claim is somewhat unclear. It appears the superior court initially considered Gold Country's Open Meetings Act claim to have been rendered moot by the Planning Commission's de novo hearing; the court noted in its order on summary judgment, "[t]here is no reason to now void an action taken at a lower level of borough operations when the entire issue had received a new hearing at a higher level." But the superior court's subsequent Sua Sponte Order of Clarification acknowledged that its first order had not analyzed whether the Platting Board violated the Open Meetings Act. The superior court reasoned that public interest concerns required it to consider the alleged Open Meetings Act violations, regardless of whether they were moot. The Sua Sponte Order concluded that adequate notice of the site inspection had been given and that the Borough had not violated the Open Meetings Act.

8. *Witt v. State, Dep't of Corr.,* 75 P.3d 1030, 1033 (Alaska 2003) (citing *Spindle v. Sisters of Providence in Wash.,* 61 P.3d 431, 436 (Alaska 2002)).

9. *Id.* (citing *Spindle,* 61 P.3d at 436).

10. *Balough v. Fairbanks N. Star Borough,* 995 P.2d 245, 254 (Alaska 2000) (citing *Davila v. Davila,* 908 P.2d 1027, 1031 (Alaska 1995)).

11. *Id.* (citing *Buster v. Gale,* 866 P.2d 837, 841 n. 9 (Alaska 1994)).

12. *Thomann v. Fouse,* 93 P.3d 1048, 1050 (Alaska 2004).

that Gold Country's Open Meetings Act claims should be addressed even though they are moot. But in light of our recent decision in *Mullins v. Local Boundary Commission*,[13] we reach this conclusion for different reasons than those cited by the superior court.[14]

We have held that "[a] claim is moot 'if it has lost its character as a present, live controversy' or 'if the party bringing the action would not be entitled to any relief even if it prevails.'"[15] In *Mullins*, the plaintiff filed an appeal in superior court challenging the Local Boundary Commission's decision to approve a petition for incorporation of the Deltana Borough.[16] The plaintiff sought to stay the election in which voters would decide whether to incorporate the proposed borough.[17] The superior court denied the plaintiff's motion to stay the election, and when the voters overwhelmingly rejected the proposal, the superior court dismissed the plaintiff's lawsuit as moot.[18] On appeal, the plaintiff argued that the Local Boundary Commission had violated the Open Meetings Act.[19] We held that "[t]he vote against incorporation voided the approval decision and provided the principal relief that [the appellant] sought in her appeal to the superior court," thus rendering the appellant's claims under the Open Meetings Act moot.[20]

We distinguished the situation in *Mullins* from the circumstances of *Alaska Community Colleges' Federation of Teachers, Local No. 2404 v. University of Alaska (ACCFT)*.[21] In that case, we held that Open Meetings Act claims should be reached even where a subsequent meeting cured previous violations because "[t]he issues surrounding the first meeting [were] of sufficient public importance" that prosecution of a declaratory action should be allowed, "even assuming technical mootness."[22] But we declined to apply this principle in *Mullins*:

> Unlike in *ACCFT*, the [Local Boundary Commission's] approval decision was not reaffirmed at a curative meeting, and it is not still in effect. Mullins, unlike the plaintiff in *ACCFT*, cannot obtain the substantive relief she seeks because the [Local Boundary Commission's] decision allegedly made in violation of the [Open Meetings Act] has been voided by subsequent events.[23]

We held in *Mullins* that "[w]here a decision is no longer in effect ... a court should conduct a standard mootness analysis to determine whether to address the [Open Meetings Act] claim."[24]

Here, the superior court granted summary judgment against the Kniffens, declaring that the Gold Country Estates covenant restricting lots to residential use was enforceable "to [the] extent the lots are not to be used to create driveways to other subdivisions." The superior court's ruling provided the primary relief sought by Gold Country, and Gold Country's claim "has lost its character as a present, live controversy."[25] Gold Country would not be entitled to further relief even if it prevailed because the superior court's separate ruling established that Gold Country's covenants do not permit the use of the Kniffens' lot as a driveway.

■ Although Gold Country's Open Meetings Act claims are moot, we "will hear an otherwise moot case to determine who is the

---

**13.** 226 P.3d 1012 (Alaska 2010).

**14.** We note that the *Mullins* decision was issued after the superior court ruled on Gold Country's Open Meetings Act claims and therefore was not available to inform the superior court's analysis.

**15.** *Mullins*, 226 P.3d at 1017 (quoting *Ulmer v. Alaska Rest. & Beverage Ass'n*, 33 P.3d 773, 776 (Alaska 2001)).

**16.** *Id.* at 1014–15.

**17.** *Id.*

**18.** *Id.*

**19.** *Id.* at 1017–20.

**20.** *Id.*

**21.** *Id.* at 1019 (citing *Alaska Cmty. Coll. Fed'n of Teachers, Local No. 2404 v. Univ. of Alaska (ACCFT)*, 677 P.2d 886 (Alaska 1984)).

**22.** *ACCFT*, 677 P.2d at 889.

**23.** *Mullins*, 226 P.3d at 1019.

**24.** *Id.* at 1019–20.

**25.** *Id.* at 1017 (quoting *Ulmer v. Alaska Rest. & Beverage Ass'n*, 33 P.3d 773, 776 (Alaska 2001)).

prevailing party for purposes of awarding attorney's fees." [26] Thus, where the outcome of an otherwise moot claim may "change[ ] the status of the prevailing party and thus an award of attorneys' fees," [27] we reach the merits of that claim. Reversal of the superior court's ruling on Gold Country's Open Meetings Act claims would likely deprive the Borough of prevailing party status. This possibility requires us to reach the merits of Gold Country's moot Open Meetings Act claims.

### B. Neither The Platting Board Nor The Planning Commission Violated The Open Meetings Act.

▮ Gold Country argues that the Platting Board's December 14 site visit violated the Open Meetings Act because it was improperly noticed and improperly convened, and because the Planning Commission's de novo hearing did not cure any Open Meetings Act violations. The Borough contends that the December 14 site visit was not a "meeting" within the meaning of the Open Meetings Act. We hold that the site visit qualified as a "meeting," but that it was properly noticed and did not otherwise violate the Open Meetings Act's requirements.

### 1. The December 14, 2005 site visit was a "meeting" subject to the Open Meetings Act.

Alaska's Open Meetings Act, AS 44.62.310(a), provides that "[a]ll meetings of a governmental body of a public entity of the state are open to the public except as otherwise provided by this section or another provision of law." Reasonable notice is required for all meetings required to be open under the Act. [28] The statute defines "meeting" as:

> a gathering of members of a governmental body when more than three members or a majority of the members, whichever is less, are present, a matter upon which the governmental body is empowered to act is considered by the members collectively, and the governmental body has the authority to establish policies or make decisions for a public entity. [29]

Gold Country claims the Borough conceded that the site visit was a special meeting because the Platting Board's Appeal Staff Report to the Planning Commission stated that "[t]he site inspection was a properly noticed public meeting." The Borough counters that "[s]ite visits ... are not 'meetings' within the definition set forth in the Open Meetings Act" because "[t]he Board cannot perform any act that will legally bind the municipality on a site visit." It is undisputed that a quorum of four Platting Board members attended the site visit; the question is whether they collectively considered "a matter upon which the governmental body is empowered to act" during the visit. [30]

Gold Country cites *Brookwood Area Homeowners Association, Inc. v. Municipality of Anchorage* [31] in support of its contention that the site visit was a "meeting" for purposes of the Open Meetings Act. In *Brookwood*, a quorum of Anchorage Municipal Assembly members met with Quadrant, a developer, after the Planning and Zoning Commission rejected Quadrant's rezoning application. [32] The meeting took place in Quadrant's office. [33] Quadrant employees and Assembly members discussed the rejected

---

26. *Smallwood v. Cent. Peninsula Gen. Hosp., Inc.,* 227 P.3d 457, 461 (Alaska 2010) (internal quotation marks omitted); *see also LaMoureaux v. Totem Ocean Trailer Express, Inc.,* 651 P.2d 839, 840 n. 1 (Alaska 1982) (overruling prior cases holding that this court "will not hear a moot case merely to determine who is the prevailing party for purposes of awarding attorneys' fees").

27. *Ulmer,* 33 P.3d at 777 (holding that consideration of a moot case was *not* required where "there was no award of attorney's fees that would be affected by appellate review and the issue ha[d] not been preserved for appeal").

28. AS 44.62.310(e).

29. AS 44.62.310(h)(2)(A).

30. *Id.*

31. 702 P.2d 1317 (Alaska 1985).

32. *Id.* at 1320.

33. *Id.*

rezoning application and the Assembly later approved an amended version of the rezoning application.[34] A homeowners association filed suit against the Municipality alleging that the Quadrant meeting violated the Open Meetings Act.[35] The superior court held that no "meeting" took place at Quadrant's offices for purposes of the Open Meetings Act, but we reversed that decision on appeal. We held that "a 'meeting' includes every step of the deliberative and decision-making process when a governmental unit meets to transact public business." [36]

Here, the Platting Board's site visit is distinguishable from the meeting in *Brookwood:* The Board did not directly interact with the applicant at the site visit (although Mr. Kniffen was present at the site during the visit), and, unlike the *Brookwood* meeting, the Platting Board's visit was publicly announced in the newspaper and on the Borough's website. Nonetheless, we conclude that the information-gathering and discussion at the site visit constituted collective consideration of "a matter upon which the governmental body [was] empowered to act" [37] and a key step in the "deliberative and decision-making process" [38] by which the Platting Board reversed its initial vote and approved the Kniffens' variance application. The Platting Board members received "evidence" in the sense that they made observations of the site and had an opportunity to assess the merits of the safety concerns voiced at the November 17 meeting. We thus hold that the site visit was a meeting for purposes of the Open Meetings Act.

**34.** *Id.* at 1320–21.

**35.** *Id.* at 1320.

**36.** *Id.* at 1323. *Brookwood* was decided before the substantial legislative revision of the Open Meetings Act in 1994. When *Brookwood* was decided, the Open Meetings Act did not define the term "meeting." *See* Ch. 69, § 1, SLA 1994.

**37.** AS 44.62.310(h)(2)(A). It is irrelevant that the Board members who attended the site visit were not, as the Borough argues, able to perform any act during the site visit itself that would legally bind the Borough; the statutory definition of "meeting" requires only that members of a government body consider a matter upon which

### 2. The Borough provided adequate notice of the December 14 site visit pursuant to AS 44.62.310.

▉ Gold Country argues that because the Platting Board did not send out "Dear Property Owner" letters or broadcast a public service announcement to notice the December 14 site visit, the site visit was an improper meeting. We disagree. The Open Meetings Act does not require public meetings to be noticed with individual letters mailed to each potentially affected property owner. Alaska Statute 44.62.310 only requires that "[r]easonable public notice shall be given for all meetings required to be open under this section." [39] Notices must include "the date, time, and place of the meeting," "may be given using print or broadcast media," and must be "posted at the principal office of the public entity" in question.[40]

Gold Country argues that AS 29.40.130, defining proper notice of hearings, requires the platting authority to schedule a hearing on any properly filed petition for replat or plat alteration and to "mail a copy of the notice ... to each affected property owner." [41] Because the Kniffens' variance and subdivision applications would affect Gold Country members, Gold Country reasons that AS 29.40.130 required the Platting Board to provide notice of the December 14 site visit via individual "Dear Property Owner" letters. Gold Country also argues that the Borough's past practice of sending such letters in advance of hearings in this matter gave property owners a reasonable expectation that they would receive mailed notice of any related meetings. But AS 29.40.130 gov-

the body is empowered to act, even if such action is ultimately taken at a later meeting or hearing. As we noted in *Brookwood*, "[m]odern public meetings statutes reject the argument that only the moment of ultimate decision must be subject to public scrutiny, and require that preliminary deliberations be open as well." *Brookwood*, 702 P.2d at 1322.

**38.** *Brookwood*, 702 P.2d at 1323.

**39.** AS 44.62.310(e).

**40.** *Id.*

**41.** AS 29.40.130.

erns notice in the case of alteration or replat *hearings* at which "[t]he platting authority shall consider the alteration or replat petition ... and make its decision on the merits of the proposal." [42] It does not govern the much broader category of "meetings," which, as defined in AS 44.62.310, need not—and, in the case of the site visit here, did not—involve consideration and final resolution of a specific replat petition. As Gold Country points out, the Platting Board *did* mail individual notices regarding the October 27 initial application hearing and the December 15 reconsideration hearing (as well as the April 19, 2005 Planning Commission appeal hearing), consistent with AS 29.40.130. It was not required to do so with respect to the December 14 site visit meeting.

Gold Country also argues that the Platting Board was required to broadcast a public service announcement giving notice of the December 14 meeting, but it erroneously cites to FNSBC chapter 2.09, which provides rules of procedure for the Assembly. The Platting Board is governed by its own Rules of Procedure, found in FNSBC chapter 2.39. The Platting Board's rules do not require a public service announcement of its special meetings.

Ultimately, we find no error in the superior court's ruling that acceptable notice was given of the site visit meeting. But nothing in the opinion issued today should be read to undermine the importance of the legislative goals expressed in the Open Meetings Act. We encourage government bodies to provide notice of hearings and meetings through a variety of the means authorized in the Open Meetings Act, and we observe that particular care should be taken to abide by the spirit and intent of the Open Meetings Act in situations where a member of the public body is seeking action that would benefit the member personally.

On the record presented to us, we do not find that the Platting Board's newspaper and online announcements regarding the December 14 site visit were inadequate. The site visit did not violate the Open Meetings Act due to improper notice.

### 3. The December 14 site visit was properly convened.

■ Gold Country also argues that the December 14 site visit was "[i]mproperly [c]onvened" and that Matheson's motion for reconsideration was defective. Gold Country considers these to be violations of the Open Meetings Act. Both arguments are unpersuasive.

Borough Code provides that the chairperson or a quorum of the Board members may call a special meeting of the Board.[43] Both parties appear to assume that Matheson, who filed for reconsideration, also called the site visit. Matheson was the acting chairperson in November and December 2004;[44] she therefore had the authority to "call a special meeting" in the form of the requested site inspection.

Gold Country's argument that Matheson's motion for reconsideration was invalid is without legal support. Gold Country argues that Matheson was required to provide written or oral reasons for her motion for reconsideration when she filed it and that her failure to do so rendered the motion itself, and the related portions of the December 15 meeting, invalid. But Matheson's motion for reconsideration complied with the Platting Board's rules: she was on the prevailing side of the initial motion, she provided notice of reconsideration before the close of business on the following workday, and she explained her reasons for seeking reconsideration at the outset of the following meeting.[45]

**42.** AS 29.40.140.

**43.** FNSBC 02.39.050(B).

**44.** Matheson was the acting vice-chair on both dates, but the record shows that McIntosh, the chair, was not present during the November 17 or December 15 meetings. Therefore, Matheson was the acting chair at both meetings. FNSBC 02.39.040(A).

**45.** The Platting Board's Rules of Order provide:

Rule 42. A notice of reconsideration may be made only by a member who voted on the prevailing side. Unless reconsideration is to take place before adjournment, notice must be given in writing by the close of business on the following workday.
Rule 43. A member filing for reconsideration shall explain his reasons.

## C. Any Due Process Violations Committed By The Platting Board Were Cured By The Planning Commission Hearing.

Gold Country argues that its due process rights were violated by the Platting Board. The Borough counters that even if the Platting Board's procedures were inadequate, the Planning Commission's de novo review of the Platting Board's decision cured any defect in due process.

Under AS 29.20.020, a "governing body shall provide reasonable opportunity for the public to be heard at regular and special meetings." While this provision does not require that the public be allowed to comment at every stage of the decision-making process, it does imply that the public should have the opportunity to respond to significant new evidence or information obtained by the governing body.[46] It is troubling that Gold Country was denied the opportunity to respond to conclusions drawn and observations made by the Board at the site visit; the failure to allow public comment after the site visit and before the Board voted to reconsider the proposal may have violated Gold Country's right to be heard. But we have held that a failure to afford due process can be cured by a subsequent hearing where due process is provided.[47] And at its April 19, 2005 de novo hearing, the Planning Commission heard testimony from both Kniffens, multiple experts they hired to advise on the Fox Bluffs development, the Platting Board's attorney, many members of the public generally, and Gold Country homeowners. The Commission also heard a comprehensive presentation by Gold Country's counsel. At the conclusion of that lengthy meeting, the

Planning Commission voted six to two to deny Gold Country's appeal. We hold that this meeting complied with due process and gave Gold Country an adequate opportunity to be heard on the modified condition of the site lines, thus curing any due process violations that may have occurred at the Platting Board level.

The primary support for Gold Country's argument that the Planning Commission's hearing did not cure the Platting Board's due process violations is that "counsel for the Platting Board, Ms. Hagen, instructed *both* bodies to disregard Gold Country's evidence that use of a Gold Country subdivision lot for transit access violated the Gold Country plat and its covenants." Gold Country argues that Hagen thus relieved the Kniffens of their burden to show that their subdivision "enjoyed legal access" and improperly made herself "a participant with the Board in decision-making."

We disagree. First, before Hagen testified in front of the Planning Commission she reminded its members that she was speaking as an advocate for the Platting Board and was not purporting to advise the Commission. Second, and more fundamentally, Gold Country's argument that there could be no "legal access" to Fox Bluffs given the restrictive covenants confining Lot 5, Block 8 to "residential use" misses the mark. As Hagen explained to the Planning Commission, neither it nor the Platting Board had jurisdiction to determine or enforce Gold Country's protective covenants.[48] Moreover, under the Borough Code, "legal access" exists if an applicant "dedicates sufficient land to provide access between the subdivision and the

---

Rule 44. Prior to reconsideration of an item, a vote must be taken on the motion to reconsider. If the motion passes, the item is then brought to the floor.

46. *See, e.g., Baghdikian v. Bd. of Adjustment of the Borough of Ramsey,* 247 N.J.Super. 45, 588 A.2d 846, 849 (N.J.Super.App.Div.1991) (holding that, following an unnoticed site inspection, the court will "not deem the failure to give notice as fatal when the board member makes a complete disclosure of his or her knowledge of the site condition gained by the inspection, and the applicants and objectors are given full opportunity to address the board member's comments").

47. *See, e.g., City of N. Pole v. Zabek,* 934 P.2d 1292, 1298 (Alaska 1997); *McMillan v. Anchorage Cmty. Hosp.,* 646 P.2d 857, 866–67 (Alaska 1982).

48. Chapter 17.30.030 of the Code, entitled Action on Major Plat Applications, states that "[t]he board shall grant preliminary approval of the major subdivision upon determining that it meets the requirements and purpose of this title." FNSBC 17.30.030(E)(1). Chapter 17.60 of the Code, which contains the subdivision requirements, does not require that the requested action comply with protective covenants. *See* FNSBC 17.60.

existing public road."[49]  Because the Kniffens' application proposed dedicating sufficient land to provide access between Fox Bluffs subdivision and an existing public road (Bullion Drive), it appears that "legal access" existed for purposes of FNSBC 17.60.070(C)(1).  Hagen's instructions to the Planning Commission did not mislead the Commission's members or violate due process.  We hold that the Planning Commission hearing was sufficient to cure the alleged due process violations in the Platting Board's proceedings.

### D.  We Affirm The Superior Court's Order Denying Attorney's Fees.

■ The Borough sought an award of fees under Rule 68 or Rule 82 as the prevailing party.  Gold Country opposed the Rule 68 request, arguing that the Borough was awarded approximately $2,350 in attorney's fees when it prevailed in Gold Country's administrative appeal of the Planning Commission decision.[50]

The superior court entered judgment in favor of the Borough but denied the Borough's request for attorney's fees under both Rule 68 and Rule 82.  The court first noted in its order that "the offer to settle made by the borough to Gold Country [was] not addressed in any way to [William] Cramer" and there was "no reason, under these facts, to award any attorney fees ... against Cramer."  The court further determined that the suit was not brought in bad faith and that the "portion of [Gold Country's] suit which brought under scrutiny the ... operation of local government [was] within the public interest."  The superior court concluded that "[t]o this extent [a Rule 68] offer by the borough to settle a claim, so as to seek upon prevailing enhanced attorney fees, would chill legitimate suits against the government."

■ We agree with the superior court that a citizen litigant's claim alleging violation of the Open Meetings Act, with no accompanying claim for monetary damages, is unlikely to be an appropriate vehicle for a Rule 68 offer.  Rule 68 provides that "[i]f the judgment finally rendered by the court is at least 5 percent less favorable to the offeree than the offer," the offeree must pay all costs and a fixed percentage of actual reasonable attorney's fees under a schedule that is pegged to the date of the offer.[51]  Here Gold Country's claim requested no monetary damages.  A Rule 68 offer of judgment serves no legitimate purpose in a citizen's Open Meetings Act claim against the government where there is no accompanying claim for monetary damages.  To allow the recovery of attorney's fees would force the citizen litigant to drop its suit or face a potentially ruinous attorney's fee award, despite its good-faith effort to require the government to follow its own processes.

Moreover, the Borough's offer of $2,000— an amount that was completely unrelated to the relief sought and which could have no effect on the allegedly illegal governmental action—could have been perceived by Gold Country as an attempt to force Gold Country to drop its effort to hold the government accountable.  As the superior court concluded, to approve of "[t]he government's offer of a nominal sum[ ] to entice a party to waive what it views as a right" would "chill legitimate suits against the government" and would be "counter-productive to good lawmaking and law review."  And as the superior court correctly noted, "[a] suit may ultimately fail but requiring the government to defend its processes is not an abuse of the system.  For such issues, the tort or business litigation strategies of offers [of] judgment are inapplicable."

Additionally, it was within the superior court's power to deny the fee award under Civil Rule 82.  Rule 82(b)(3)(I) permits the

---

**49.**  FNSBC 17.60.070(C)(1).

**50.**  The administrative appeal was dismissed when it was recognized that "[t]he result of a successful appeal by Gold Country Estates would be for the court to remand the case to the Planning Commission to consider the [Open Meetings Act] violation[,]" which "would be a complete

waste of time and available resources" given that the issue was already being fully litigated before the superior court in a separate suit (i.e., the one on appeal before us).

**51.**  Alaska R. Civ. P. 68(b).

trial court to vary a fee award to "the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts." This rule provision embodies the concern expressed by Justice Matthews in his dissenting opinion in *Bozarth v. Atlantic Richfield Oil Co.*,[52] where he cautioned: "If the superior court is to serve its constitutional purpose as a forum available to all the people, superior court judges must consider whether an award of attorney's fees will impair the constitutional right of access to the courts." [53]

In *State v. Native Village of Nunapit-chuk*,[54] we expressly stated that Rule 82(b)(3)(I) "continues to apply to all cases," including "those intended to effectuate public policies." [55] We further observed that "[t]rial courts remain free to reduce awards that would otherwise be so onerous to the losing party as to deter similarly situated litigants—including litigants that would have previously been identified as public interest litigants—from accessing the courts." [56] Gold Country, and those similarly situated, have a right to seek remedial relief from perceived Open Meetings Act violations. Here, the superior court determined that an award of fees against Gold Country would chill further suits seeking review of the government's actions under its own processes. Thus, it properly applied Rule 82(b)(3)(I) to relieve Gold Country of the obligation to pay a fee award. We therefore affirm the superior court's order denying attorney's fees.[57]

## VI. CONCLUSION

We AFFIRM the superior court's grant of summary judgment in favor of the Borough on Gold Country's Open Meetings Act and due process claims. We also AFFIRM the superior court's denial of the Borough's motion for attorney's fees.

STOWERS, Justice, with whom CHRISTEN, Justice, joins, concurring in part and dissenting in part.

I agree with the court's resolution of this appeal except as to its conclusion regarding the superior court's order on attorney's fees (Part V.D.). Rather than affirming the order denying attorney's fees, because I find the court's order unclear, I would remand and have the superior court clarify its order.

As the court's opinion explains, the Borough sought an award of fees under Rule 68 or Rule 82 as the prevailing party. Gold Country opposed the Rule 68 request, arguing that the Borough was awarded approximately $2,350 in attorney's fees when it prevailed in Gold Country's administrative appeal of the Planning Commission decision. But Gold Country's opposition to the motion for fees also conceded that the Borough could be entitled to fees under Rule 82; indeed, Gold Country filed a proposed order granting the Borough $2,453 in attorney's fees.

The superior court entered judgment in favor of the Borough but denied the Borough's request for attorney's fees under both Rule 68 and Rule 82. The court noted in its order that "the offer to settle made by the borough to Gold Country [was] not addressed in any way to [William] Cramer" and there was "no reason, under these facts, to award any attorney['s] fees ... against Cramer." The court further concluded that the "portion of [Gold Country's] suit which brought under scrutiny the ... operation of local government is within the public inter-

52. 833 P.2d 2 (Alaska 1992).

53. *Id.* at 6 (Matthews, J., dissenting).

54. 156 P.3d 389 (Alaska 2007).

55. *Id.* at 406.

56. *Id.*

57. Gold Country also claims that because it raised a constitutional due process claim, it is entitled to protection under AS 09.60.010(c)(2), which provides that the court "may not order a claimant to pay the attorney fees of the opposing party devoted to claims concerning constitutional rights if the claimant as plaintiff, counterclaimant, cross claimant, or third-party plaintiff in the action or appeal did not prevail in asserting the right, the action or appeal asserting the right was not frivolous, and the claimant did not have sufficient economic incentive to bring the action or appeal regardless of the constitutional claims involved." Because we affirm the superior court's judgment declining to award attorney's fees, we need not reach the question whether Gold Country is protected from an award of fees under AS 09.60.010(c)(2).

est. To this extent an offer by the borough to settle a claim, so as to seek upon prevailing enhanced attorney['s] fees, would chill legitimate suits against the government."

After examining the record thoroughly, I remain uncertain of the basis for the superior court's order denying fees against Gold Country. Its order may indicate that the superior court intended to deny part of the Borough's fees under AS 09.60.010 because some part of the Borough's fees were incurred in connection with Gold Country's due process claim. Under some circumstances, that statute applies when constitutional claims are litigated; in particular, it can shield an unsuccessful litigant from fees associated with constitutional claims.[1] But the superior court's order denying fees did not cite AS 09.60.010, nor does it explain how application of this statute could justify the denial of all of the Borough's attorney's fees. Similarly, though the superior court explained its reasons for denying the request for Rule 68 fees against Cramer, it did not explain, and I cannot discern, its reasons for concluding there was not a valid Rule 68 offer as to Gold Country.

I would therefore affirm the superior court's order denying attorney's fees against Cramer. But because I am unable to determine what statutory or rule-based authority the superior court relied upon to deny the Borough's motion for attorney's fees against Gold Country,[2] I would remand to the superior court for clarification, and to make additional findings, if necessary.

In all other respects, I agree with the court's opinion affirming the superior court's grant of summary judgment in favor of the Borough on Gold Country's Open Meetings Act and due process claims.

---

1. Under AS 09.60.010(c)(2), the court "may not order a claimant to pay the attorney fees of the opposing party devoted to claims concerning constitutional rights if the claimant ... did not prevail in asserting the right, the action or appeal asserting the right was not frivolous, and the claimant did not have sufficient economic incentive to bring the action or appeal regardless of the constitutional claims involved."

2. The court's opinion does an excellent job of explaining what it thinks the superior court's order sought to accomplish. But I think the court is reading more into the order than is there, and I would prefer to have the superior court explain its reasoning rather than engage in an exercise of legal hermeneutics.